Nache AFRIKA, Plaintiff,

v.

Donald SELSKY, Michael Parrot, Gary Bezio, Dale LaBombard, and Andrew Ryan, Defendants.

No. 87 CIV 8455 (LBS).

United States District Court, S.D. New York.

June 25, 1990.

Nache Afrika, pro se.

Robert Abrams, Atty. Gen., State of N.Y., New York City (Susan L. Watson, Asst. Atty. Gen., of counsel), for defendants Selsky, Parrot, Bezio and LaBombard.

Kenneth H. Holcombe, Clinton Co. Atty., Plattsburgh, N.Y., for defendant Ryan.

## OPINION

SAND, District Judge.

Defendants Michael Parrot, Gary Bezio and Dale LaBombard, all officers at the Clinton County Correctional Facility, have filed a motion to dismiss the complaint filed by *pro se* plaintiff Nache Afrika, who has alleged that these defendants violated his right to due process under 42 U.S.C. § 1983 during a 1986 disciplinary hearing.

Defendant Andrew Ryan, former district attorney of Clinton County, who presented an assault case against Afrika to a grand jury, has also moved to dismiss Afrika's malicious prosecution claim against him.

Defendant Donald Selsky, Director of Special Housing/Inmate Discipline, upheld the results of the disciplinary hearing. Plaintiff Afrika claims that Selsky's review was constitutionally deficient, that he knew of the alleged due process violations that occurred during the hearing when he affirmed the disposition, and that he falsely imprisoned Afrika in segregated housing during the six-day delay between his reversal order and Afrika's release. Defendant Selsky denies these assertions and has moved for summary judgment.

For the reasons that follow, we grant the motions to dismiss the claims against defendants Parrot, Bezio, LaBombard and Ryan, and also grant Selsky's motion for summary judgment.

## BACKGROUND

On March 20, 1986 plaintiff Nache Afrika was charged with assaulting a corrections officer and disobeying a direct order. Afrika, a prisoner at the Clinton County Correctional Facility, allegedly objected to Officer Bezio's frisk technique and struck Bezio over his left eye. On April 2, 1986, after two days of testimony, hearing officer Parrot found Afrika guilty of both charges. He based his decision on the testimony of Officers Bezio and LaBombard (eyewitnesses), Officer O'Brian (who was watching the television monitors), and other witnesses who arrived after the alleged attack. None of the witnesses called provided testimony supporting Afrika's claim of innocence. Afrika objected that several witnesses he had requested and who could prove his innocence were not called. Parrot claimed that their testimony was irrelevant, that he had heard enough to corroborate Bezio's report, and further that after watching the video tape of the incident, he did not believe that any of the uncalled witnesses were present at the scene of the incident. (Selsky Affidavit, Exhibit G, at 32.) He then sentenced Afrika to ninety days in the Special Housing Unit ("SHU") to be served consecutively with another SHU sentence unrelated to this action. On June 9, 1986, Donald Selsky, Director of Special Housing/Inmate Discipline, affirmed the disposition of the hearing "based on a review of the hearing documents." (Selsky Affidavit, ¶ 13).

On June 26, 1986 plaintiff commenced an Article 78 proceeding in the Clinton County Superior Court before Justice William Intemann, Jr. challenging both Bezio's report and Parrot's and Selsky's determinations. On August 11, 1986, Justice Intemann issued an order to show cause why relief should not be granted to Afrika, requiring the prison officials to respond by September 9. Afrika began the SHU confinement relevant to this dispute on August 12. On September 4, 1986, Assistant Attorney General Tucker phoned Selsky, who was not a party to the Article 78 proceeding, and informed him that Parrot had commit-

ted a procedural error by not writing down the reasons for his denial of witnesses as required by state law. (Selsky Affidavit, ¶ 17).

On September 5, 1986, Selsky voluntarily reversed the hearing disposition and sent the reversal and expungement orders via pouch mail to the Green Haven facility where Afrika was confined in SHU. On September 11, six days after Selsky prepared the papers, plaintiff was released from SHU. The release occurred within 24 hours of receipt of the notification.

Defendant Ryan, the Clinton County District Attorney at the time, separately presented to a grand jury the facts of the March 20, 1986 incident in the prison. On May 26, 1986, the grand jury for Clinton County returned an indictment against Afrika charging him with the assault of Officer Bezio. (Amended Complaint, ¶ 27). This indictment was dismissed on October 8, 1986. (Amended Complaint, ¶ 36).

## PROCEDURAL HISTORY

On June 1, 1987, Afrika filed his original complaint in the United States District Court for the Western District of New York. He alleged that Selsky and the SHU personnel (Scully, Winch and Weitz) unlawfully confined him for six days after Selsky's reversal. On November 3, 1987, the case was transferred to the Southern District of New York.

On June 3, 1988, defendants Selsky, Scully, Winch and Weitz moved for summary judgment. This court granted the motion on January 31, 1989 as to defendants Scully, Winch and Weitz because they lacked personal involvement in the delay: within twenty four hours of receipt of notification to release Afrika from SHU, they complied with the order. However, we denied summary judgment to Selsky because we held that the existence of a state court order requiring Afrika's release on August 11, 1986 was a fact in dispute. (Opinion at 6). We held that Afrika had stated a claim if Selsky had in fact delayed his release either from August 11 to September 11, or from September 6 to September 11.

On March 16, 1989, defendant Selsky again moved for summary judgment claiming qualified immunity. Plaintiff requested leave to amend his initial complaint on April 21, 1989, and we granted his request on May 30, 1989. Further, we denied Selsky's motion for summary judgment without prejudice to its renewal after plaintiff amended his complaint.

Plaintiff amended his complaint on July 10, 1989 adding defendants Parrot, LaBombard, and Bezio and defendant Ryan. Afrika alleged that he was wrongfully denied witnesses at the prison hearing and that Selsky affirmed the disposition knowing that Afrika's due process rights had been violated. (Amended complaint, ¶¶ 37–39). Moreover, plaintiff claimed that the procedures for transmitting release orders were unconstitutional (*Id.* at ¶¶ 55, 56, 63–69), that the administrative review procedures were constitutionally deficient (*Id.* at ¶¶ 57–62), and that Ryan knowingly used meritless evidence to falsely and maliciously prosecute him (*Id.* at ¶¶ 70–74).

Plaintiff prays for declaratory relief against Selsky, Parrot, LaBombard and Bezio and injunctive relief against Ryan. Additionally he asks for compensatory and punitive damages for, inter alia, mental distress, loss of earnings, loss of work and schooling opportunity, false arrest and false imprisonment. *Id.* at ¶ 47.

Defendant Selsky filed a motion for summary judgment on December 9, 1989. Defendants Parrot, Bezio and LaBombard filed a motion to dismiss on February 2, 1990. Defendant Ryan filed a motion to dismiss on March 27, 1990. For the reasons that follow we grant the motions to dismiss and the motion for summary judgment.

## DISCUSSION

**I. Motion to Dismiss Filed by Defendants Parrot, Bezio, and LaBombard:**

Defendants Parrot, Bezio, and LaBombard ("New Defendants") have filed a motion to dismiss for failure to file a timely claim and for lack of requisite personal

involvement in the alleged infringement of due process rights.

■ The Supreme Court has set forth specific guidelines for determining whether an amended complaint relates back to the original complaint in accordance with Federal Rule of Civil Procedure 15(c). *Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986). For statute of limitations purposes, a new claim will relate back to the date of filing the original complaint if plaintiff's amended complaint meets all four prongs of the *Schiavone* test. The four factors are:

(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in making its defense; (3) the party must or should have known that, but for a mistake concerning its identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Id.* at 29, 106 S.Ct. at 2384. Since Afrika's amended complaint fails the second and third *Schiavone* tests, it does not relate back under Federal Rule of Civil Procedure 15(c).

■ The New Defendants did not receive any notice during the limitations period. There is no dispute here that the defendants did not receive actual notice until they were served either "at the end of November or beginning of December 1989." (New Defendants' Memorandum of Law in Support of Motion to Dismiss, at 5). Nor is there any dispute that the New Defendants were served after the three-year statute of limitations applied to actions brought under § 1983 in New York. However, courts have held that when both the old and new defendants are state officials and are represented by the same lawyers, as in this case, a court is entitled to find that the new defendants received constructive notice which satisfies Federal Rule of Civil Procedure 15(c). *See Morrison v. Lefevre*, 592 F.Supp. 1052 (S.D.N.Y. 1984); *Florence v. Krasucki*, 533 F.Supp.

1047 (W.D.N.Y.1982). Plaintiff argues that under these cases, attorney Watson's representation of both the old and the new defendants provided the New Defendants with ample constructive notice of Afrika's claim, even though neither the New Defendants nor their actions were mentioned in the original pleadings. We disagree.

In *Morrison* the plaintiffs did not know who had allegedly planted contraband in the prisoner's wife's handbag. Moreover, the prison officials conspired to withhold information. Likewise in *Florence* the plaintiffs did not know the identity of the defendants. Their complaint simply mentioned an incident concerning "five state troopers." Thus the court, in the interest of justice, allowed the amendment with the proper names to relate back.

In Afrika's case, though, he knew when he filed his original complaint, who had allegedly denied him a fair hearing, but chose to sue Selsky instead for affirming that denial. The original complaint targeted only Selsky and the guards at the SHU. Thus plaintiff cannot rely on *Morrison* and *Florence* for support because he had full knowledge at the time he filed his original complaint of the identity of the New Defendants. Unlike the plaintiffs in *Morrison* and *Florence*, Afrika is not substituting the proper defendants for those mentioned in the original complaint. Rather, he is advancing new legal theories against additional defendants which are, unfortunately for him, time-barred by the statute of limitations. Consequently, the fact that the New Defendants are represented by the same counsel is irrelevant and not enough to bypass the statute of limitations.

Additionally, plaintiff must demonstrate that the New Defendants must have known that, but for Afrika's mistake, the action would have been brought against them. In this case there does not seem to be any mistake as to the identity of the New Defendants. The statute of limitations was enacted precisely to prevent the bringing of stale claims and to protect defendants from the fear of unexpected litigation. Since Afrika made no mistake in his original

pleading, he cannot circumvent the statute of limitations.

Because Afrika did not file his amended complaint against the New Defendants in a timely manner, it is barred, and we need not reach the question of the New Defendants' personal involvement in the alleged violations of due process. For the reasons stated above, the motion to dismiss is granted to the New Defendants.

## II. Motion to Dismiss Filed by Defendant Ryan:

With regard to Afrika's claim against Ryan (who has not moved to dismiss on statute of limitations grounds) we hold that Afrika has not stated a claim for which relief can be granted. Since Ryan is now a state supreme court judge, injunctive relief cannot be granted against him in the capacity of a district attorney. Additionally, by plaintiff's own statements (Amended Complaint ¶ 36), the indictment against him has been dismissed. Thus we do not understand what injunctive relief plaintiff seeks from Ryan either as a judge or as a district attorney. Plaintiff also clearly does not seek damages from Defendant Ryan, and such relief would probably be barred by the doctrine of prosecutorial immunity. For the foregoing reasons, the motion to dismiss is granted to Defendant Ryan.

## III. Motion for Summary Judgment Filed by Defendant Selsky:

Plaintiff Afrika has alleged that Selsky performed a constitutionally insufficient review of his case, that he affirmed Parrot's decision knowing that a due process violation had taken place, and that he purposely allowed Afrika to remain in SHU for six extra days after the reversal by using an unreasonably slow method of transmitting the release orders.

Defendant Selsky seeks summary judgment based on four defenses. First, he asserts that his alleged knowledge of Parrot's denial of Afrika's right to call several witnesses does not state a claim under 42 U.S.C. § 1983. Second, he argues that he is entitled to qualified immunity. Third, he contends that the plaintiff has no liberty interest in the review of the audio tape as part of the administrative appeal. Finally,

Selsky maintains that plaintiff's claim that the pouch mail system is unconstitutional is not cognizable under section 1983. We will deal with each point in turn.

■ Afrika does not claim that Selsky did not review his case at all, but rather that the review was constitutionally insufficient. However, courts have granted liberal discretion in review of administrative rulings. The Supreme Court has declined to adopt more stringent evidentiary standards as a constitutional requirement stating "fundamental fairness guaranteed by due process does not require courts to set aside decisions of prison administrators that have some basis in fact." *Superintendent Mass. Correctional Inst. v. Hill,* 472 U.S. 445, 456, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356. The Court does not require examination of the entire record, independent assessment of the witnesses or even a weighing of the evidence. Instead "the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–456, 105 S.Ct. at 2774. (emphasis added).

To determine whether Selsky's review violated Afrika's due process rights, we must determine both whether there was any evidence to support the hearing officer's determinations and whether the hearing officer himself violated Afrika's rights to procedural due process. We find that although Selsky did not have access to testimony from all of the requested witnesses, there was at least some evidence to support the hearing officer's determination of Afrika's guilt based on the corroboration of Bezio's testimony.

Additionally, while we believe that the plaintiff could have had a fairer hearing had he been given the opportunity to call all of his witnesses, Officer Parrot, the hearing officer, did not violate the minimal Supreme Court requirements by selecting which witnesses he would call. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court held that "the inmate facing disciplinary proceedings should be allowed to call witnesses and

present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566, 94 S.Ct. at 2979. This seminal decision provided prison authorities with broad discretion stating that "officials may deny an inmate's request to call witnesses whether it be for irrelevance, lack of necessity or the hazards presented in individual cases." *Id.* at 566, 94 S.Ct. at 2980. Hence, though the denied witnesses *might* have provided testimony to exculpate Afrika, Afrika was not entitled to the "full panoply of rights due a defendant in a criminal prosecution." *Id.* at 556, 94 S.Ct. at 2975. The hearing officer's denial based on "irrelevance" and sufficient corroboration from those witnesses already called meets the bare minimum required by *Wolff.* Thus no due process violation took place at Afrika's hearing.

Recently the Second Circuit decided a case very much like plaintiff's in which a hearing officer denied additional witnesses because he felt their testimony would be redundant and would "jeopardize institutional efficiency." *Fox v. Coughlin,* 893 F.2d 475 (2nd Cir.1990). Even though the hearing officer did not define the jeopardy to the institutional interest, the Second Circuit held that under the *Wolff* standard this was a constitutionally sufficient reason for denial. The court expressed skepticism about the hearing officer's justification for denying additional witnesses: "[H]ere the hearing officer had no reason to believe the testimony of the two officers would be redundant ... [T]he only basis for the officer's decision was that Spreer and McCaffey endorsed the Report, which alone is insufficient to conclude their testimony would be cumulative ... Nor did Fox pose any threat to institutional safety." *Id.* at 478. Nonetheless, the court deemed itself to be bound by the flexible standard of *Wolff* and thus did not find a due process violation.

Courts have found violations of due process in cases where the prisoner had neither ample notice nor the opportunity to call any witnesses at all. *Patterson v. Coughlin,* 761 F.2d 886 (2nd Cir.1985). Additionally, courts have concluded that administrators violate the right to due process when a defendant is not advised of his right to witnesses and is sentenced to disciplinary confinement without the benefit of a fair hearing. *Williams v. Smith,* 781 F.2d 319 (2nd Cir.1986). In this case, however, Afrika did call witnesses, none of whom were too helpful to his case. When the hearing officer had determined that further witnesses would be "irrelevant," he was entitled to deny Afrika's request. "The extraordinarily difficult undertaking of running a prison requires that prison administrators be afforded a broad range of discretion." *Morrison v. Lefevre,* 592 F.Supp. 1052, 1071 (S.D.N.Y.1984). "In determining whether a prison disciplinary committee properly excluded a witness from a hearing, because of the exigencies of the prison environment, and the need for prison officials to maintain safety and discipline, a reviewing court must accord due deference." *Freeman v. Rideout,* 808 F.2d 949, 954 (2nd Cir.1986). This court then, must respect the hearing officer's judgment absent a flagrant due process violation. We find that Afrika sustained no due process deprivation by virtue of his inability to call all of the witnesses of his choice.

We must also consider whether Selsky's alleged knowledge of the state procedural violation gives rise to a cause of action under section 1983. We find that it does not. Afrika claims that Selsky violated his right to due process by affirming the hearing disposition even though Selsky knew that Parrot had failed to provide written justification for the denial of witnesses as mandated by state statute.[1] Since we find that there are disputed issues of fact regarding Selsky's knowledge, we will assume for the purposes of this motion that Selsky did in fact know of the procedural violation.

The Supreme Court has consistently refused to require prison officials to provide

---

1. The statute provides in relevant part, "[I]f permission to call a witness is denied, the hearing officer shall give the inmate a written statement stating the reasons for the denial, including the specific threat to institutional safety or correctional goals presented." 7 N.Y.C.C.R. 254.5(a).

written justifications for their refusal to call witnesses. *See Ponte v. Real,* 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985). Thus we must look to the state statute to determine whether or not a liberty interest has been created.

■ To determine whether the state has created a liberty interest a court should look for "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates." *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). Courts that have applied the *Hewitt* "explicitly mandatory language" rule have stated that the mere adoption by the state of procedural guidelines without more is insufficient to give rise to a liberty interest protected under the Fourteenth Amendment. *See Matiyn v. Henderson,* 841 F.2d 31 (2nd Cir.1988).

■ In Afrika's case, the state statute did not grant substantive rights but merely served to insure, through procedural requirements, that the prisoner would be afforded a fair hearing. The liberty interest that the state accords to prisoners is the right to due process before being sentenced to disciplinary confinement, not the right to written justification for denial of witnesses. Parrot did inform Afrika during the hearing that he thought that his witnesses were "irrelevant" and that he thought that they were not present at the time of the incident. Thus Afrika cannot, and indeed does not, claim that he did not know why his witnesses were refused. Accordingly, since Afrika received a fair hearing, the fact that Selsky affirmed the disposition regardless of a state procedural violation (which affected neither the substance nor the outcome of the hearing), did not violate section 1983. "Although a due process liberty interest may be provided in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that merely establishes procedural requirements." *Cofone v. Manson,* 594 F.2d 934, 938 (2nd Cir.1979). "State procedural requirements do not establish federal constitutional rights ... [A]t most, any violation of state procedural requirements would create liability under state law." *Bolden v. Alston,* 810 F.2d 353, 358 (2nd Cir.1987).

Consequently, the New York statute requiring written justification for denial of witnesses, while an important procedural safeguard, does not confer a liberty interest. The statute does not contain "repeated use of explicitly mandatory language," nor does it grant any specific substantive interests to the prisoner. Thus because this statute is procedural in nature, neither the hearing officer's violation nor Selsky's affirmance violated Afrika's right to due process.

In assessing Selsky's liability for the review and the state procedural violation we find that Selsky's review, while not the most thorough, did meet the *Superintendent* "any evidence" standard. Moreover, his affirmance of the hearing disposition despite the violation of a state procedural requirement did not violate section 1983. Thus we grant summary judgment in his favor on this issue.

Since we have determined that Selsky's review was constitutionally sufficient, we need not reach the question of his entitlement to qualified immunity. Moreover, although there is no need to address Selsky's third defense (since his review was adequate) we find that because both the hearing and the review reached the minimal standards, he did not violate Afrika's liberty interest in not being confined without due process.

We now turn to Selsky's final defense regarding the constitutionality of the method of transmitting the reversal order to SHU. In our prior Opinion of January 31, 1989, we denied summary judgment to Selsky because we believed at that time that a genuine dispute existed as to whether the state judge ordered Afrika's release on August 11, 1986. Afrika has not produced any evidence of such a court order. We therefore find as a matter of undisputed fact that no such order was issued on August 11, 1986. We will now consider only the delay in the transmittal of the release order which caused Afrika to remain in SHU for an additional six days and not the

twenty-five day delay we discussed in our prior Opinion.

■ This Court believes that overnight mail and facsimile machines which did exist in 1986 could have been used to spare the plaintiff the six extra days spent in SHU. However, it is not for us to impose administrative procedures which may have been prohibitively expensive, nor do we have the right to second guess the viability of such options. In the area of state prisons, the federal courts should refuse to interfere with internal state prison administration except in the most extreme cases involving a shocking deprivation of rights. *Baldwin v. Smith,* 446 F.2d 1043 (2nd Cir.1971). In this case there was no shocking deprivation of rights. A prisoner has no fourteenth amendment liberty interest in remaining in the general prison population. *Deane v. Dunbar,* 777 F.2d 871 (2nd Cir.1985).

■ The Supreme Court has declared that discipline and administration of state detention facilities are state functions and are subject to federal authority only when paramount federal constitutional or statutory rights intervene. *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). Here there are no such overriding federal considerations. Afrika was in no way discriminated against by the pouch mail procedure. He has not sufficiently alleged that he was singled out or that other prisoners were released by more expedient methods. Nor is the procedure lacking in fundamental fairness depriving him of due process. Afrika was being released from a more restrictive environment to a less restrictive environment, not from prison to the outside world. Even in cases in which administrative procedures have delayed the release of a parolee by six days, the courts have considered the delay constitutional because "admittedly the plaintiff's liberty is at stake, but liberty, under the Constitution, is subject to the restraints of due process and a regulation complies with the demands of due process when it is reasonable in relation to its subject and is adopted in the interest of the community." *Burgess v. Roth,* 387 F.Supp. 1155, 1159 (E.D.Pa.1975).

While it may not be perfect, we believe the pouch mail system is reasonable in relation to the subject of prisoner release and was adopted in the interest of the safety of the prison community. We also find that while it may have been quicker and more equitable for Selsky to have used overnight mail or a fax machine, we cannot penalize him if those were not the standard procedures in use in the prison system at that time. Since courts have allowed similar delays of release from prison, we cannot justify a higher standard requiring immediate release from disciplinary confinement to the general prison population. Thus we grant Selsky's motion for summary judgment on the issue of the constitutionality of the administrative procedure used to obtain Afrika's release.

## CONCLUSION

For the foregoing reasons we grant the motions to dismiss to defendants Parrot, Bezio, LaBombard, and Ryan and the motion for summary judgment to defendant Selsky.

SO ORDERED.