OPINION OF THE COURT
Kaye, J.
At issue in these appeals by two petitioner-inmates is the sufficiency of written reports — offered as substantial evidence of petitioners’ violation of a disciplinary rule prohibiting participation in violent group conduct — charging that all inmates present in the mess hall at dinnertime actively participated in a riot. We conclude that, without some specificity as to the offensive conduct attributed to petitioners, these reports alone did not constitute substantial evidence of guilt, and the orders confirming the administrative determinations should therefore be reversed.
I.
Petitioners were inmates at Great Meadow Correctional Facility in Washington County when, during dinner on July 31, 1988, a disturbance broke out in the north mess hall. Correction officers who were present later estimated that 130 to 140 inmates were in the mess hall at the time; petitioner Serrano estimated more. Officers and inmates were injured, and tear gas was used to regain control.
Among the inmates subsequently charged with infractions of prison disciplinary rules for their alleged participation in *645 the disturbance were petitioners, Sandy Serrano and Victor Bryant. Both were charged with violating prison disciplinary rule 104.10 ("Riot, Disturbances and Demonstrations”) (7 NYCRR 270.2 [B] [5] [i]), which provides that inmates "shall not conspire or take any action which is intended to or results in the takeover of any area of the facility, or, acting in a group, engage in any violent conduct or conduct involving the threat of violence.”
Facts Relating to Serrano
Petitioner Serrano’s hearing was held on August 15, 1988 at Attica Correctionál Facility, to which he had been transferred following the disturbance. The Hearing Officer’s statement lists the following as the evidence on which he relied in reaching the determination of guilt: a written inmate misbehavior report prepared by Sergeant Smith, who was present during the incident; a written report prepared by Lieutenant Phillips for the Deputy Superintendent of Security describing the results of his investigation; a written statement by Edward Ross, a civilian cook who was present during the incident; information from a "confidential inmate informant” that petitioner was seen throwing trays and plates at officers, as noted both in a written report from Phillips and by him in telephone testimony at the hearing; and written statements by Officers Adams and Beecher, who were also present during the disturbance. Although not mentioned by the Hearing Officer in the statement of evidence relied upon, an additional written report by Smith was also read into the record. Except for the inmate informant, none of the reports mentions petitioner.
Smith’s misbehavior report contains the following description of the conduct that was the basis for the disciplinary charge:
"On 7/31/88, at approximately 3:42 p.m., a riot situation erupted in the North Messhall. This incident included numerous assaults on staff by participants. The assaults included use of weapons, throwing of objects (trays, water pitchers, dishes, etc.) and striking with fists. Subject inmate was identified as being in the messhall during this riot. Employees on the scene verified that all inmates in the Messhall were actively participating in this riot. This situation necessitated the discharge of chemical agents to regain control. Upon discharge, *646 several inmates did flee the area. Those remaining were placed in a prone position on the floor. Identification of subject inmate was by departmental I.D. card and during the chemical agent decontamination process.”
Phillips’ written report stated that he had received information that the disturbance was a "well planned attack against staff,” and that inmates had actively sought participants during the afternoon prior to the disturbance. His conclusion that this was a well-planned attack was further buttressed by his own observations on the scene; he stated, moreover, that he "personally observed all inmates in the mess hall participating in this disturbance, by throwing objects (pitchers, trays, utensils, etc.) yelling, screaming and rushing towards officers in the mess hall.”
The remaining three brief eyewitness reports are virtually identical. Ross, the civilian cook, reported that "every inmate in the mess hall at this time was participating in the riot by throwing utensils, pitchers, trays or food.” Adams reported that to his "observation every inmate in the messhall was in full participation of the riot,” and Beecher reported that to his "observation every inmate in the messhall was in full participation of the riot.”
The remaining evidence was conveyed by Phillips from a confidential inmate informant. In a report to the Hearing Officer, Phillips reported that during his investigation "it has been learned that inmate S. Serrano, 86A1666, was observed throwing trays and plates at officers. This information was received through a confidential inmate informant.” During the hearing, Phillips by telephone stated that he and his staff had previously received confidential information from this informant that had proven correct, and that he then considered the source reliable. Phillips further noted that the informant had been present in the mess hall, and that he had identified Serrano from an array of 100 to 150 photos.
Though Serrano admitted his presence in the mess hall for food, he denied any participation in the riot, or any knowledge of a planned incident.
Based on this evidence, the Hearing Officer found Serrano guilty of violating disciplinary rule 104.10, and imposed a penalty of 365 days’ confinement in his cell, loss of privileges, and loss of 365 days’ good time.
*647 Facts Relating to Bryant
Petitioner Bryant’s hearing was conducted on August 8, 1988 at Great Meadow Correctional Facility. The same evidence was offered against him, with two exceptions: no statement was submitted by Beecher, and there was no confidential inmate information. Like Serrano, Bryant admitted he was in the mess hall but denied participation in, or prior knowledge of, the disturbance.
At the conclusion of the hearing, the Hearing Officer found Bryant guilty, expressing disbelief of his claim that he "sat there calmly, while things were being thrown over [his] head.” The penalty imposed was 365 days in the special housing unit, loss of privileges, and loss of one year of good time, which was modified on administrative appeal to five months in the special housing unit and five months’ loss of good time.
After exhausting administrative remedies, petitioners brought separate article 78 petitions challenging the determinations as unsupported by substantial evidence. While excluding from its consideration any information provided against Serrano by the confidential informant, the Appellate Division confirmed both findings of guilt. The court concluded that the reports of individuals with firsthand knowledge, coupled with petitioners’ admitted presence on the scene, provided substantial evidence supporting the determinations. We granted leave and now reverse.
II.
We begin our analysis with several well-settled propositions. A prison disciplinary determination must be supported by substantial evidence, meaning that in order to sustain a determination of guilt, a court must find that the disciplinary authorities have offered such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact (People ex rel. Vega v Smith, 66 NY2d 130, 139). Equally well settled is the proposition that a written misbehavior report meeting the requirements spelled out in the Department of Correctional Services regulations may alone constitute substantial evidence (id., at 140). Finally, it is fundamental that the Commissioner must follow his own regulations (see, Matter of Garcia v LeFevre, 64 NY2d 1001, 1003).
This case presents the question whether misbehavior re *648 ports that do not satisfy the Department’s requirements may nevertheless constitute substantial evidence. We conclude that here they do not.
The regulations of the Department of Correctional Services contain two separate provisions concerning reports of inmate misconduct. The first, titled "Reports of misbehavior,” requires that every incident of inmate misbehavior involving danger to life, health, security or property be reported as soon as practicable, in writing, by employees who observed the incident or have ascertained the facts (7 NYCRR 251-1.4 [a], [b]). The same regulation stipulates that in "any case where more than one inmate was involved in any such incident, the report shall indicate the specific role played by each inmate, or if the specific role of each is unknown the report shall so indicate.” (7 NYCRR 251-1.4 [c].) "Where an employee suspects, but is not reasonably sure that an inmate was involved in any such incident, the report should so indicate and set forth the facts that give rise to said suspicion.” (7 NYCRR 251-1.4 [d].)
The second regulation concerning inmate misconduct reports is titled "Misbehavior report” (7 NYCRR 251-3.1). That regulation provides that the "misbehavior report shall consist of a written specification of the particulars of the alleged incident of misbehavior involved, a reference to the inmate rule book number and a brief description of the violated rule, and the date, time and place of such incident.” Two or more incidents may be incorporated into a single report but must be separately stated, and the report must advise inmates that their statements cannot be used against them and that (in Tier II and Tier III proceedings) they have the right to call witnesses. The misbehavior reports described in this section function as charging instruments (7 NYCRR 252.3, 253.3, 254.3). Unlike charging instruments, however, where misbehavior reports in form and substance comply with the requirements of the regulations, they may alone constitute substantial evidence of guilt (People ex rel. Vega v Smith, 66 NY2d 130, 140, supra; see also, Matter of Vogelsang v Coombe, 66 NY2d 835).
The two categories of misconduct reports described by the regulations correspond to the two categories of written reports that constituted the evidence against petitioners. The written reports prepared by Phillips, Smith, Adams, Beecher and Ross are narrative accounts of the type described in section 251-1.4. *649 By contrast, the inmate misbehavior report by Smith alleging misconduct in identical terms as to each petitioner is a printed form with typewritten additions and is of the type contemplated by section 251-3.1.
The narrative eyewitness reports of misbehavior introduced as evidence against petitioners do not satisfy the plain letter of 251-1.4. Each of these reports contains only conclusory statements that all inmates present in the mess hall participated in the disturbance, with no reference to either petitioner. Thus, the reports fail to indicate the "specific role played by each inmate,” and they contain no acknowledgement that the petitioners’ specific roles were unknown, or that petitioners’ involvement in the incident was not certain but was suspected based on specific facts.
Respondent argues that the failure of the reports to specify the precise degree of each inmate’s participation is inconsequential, because the disciplinary rule prohibiting violent group conduct by inmates proscribes any degree of inmate involvement in such activity. The reports, however, do not particularize any degree of involvement at all. Assuming that even minimal participation in a riot justifies a finding that disciplinary rule 104.10 has been violated, still no specificity as to even minimal participation by either petitioner is alleged in the reports of their misbehavior.
Nor is this deficiency cured by reliance on section 251-3.1, which also requires a "written specification of the particulars of the alleged incident of misbehavior involved,” and separate statements of two or more incidents of an inmate’s misbehavior. The misbehavior reports, like the several eyewitness reports, do not specify any particulars of petitioners’ misconduct, alleging only a mass incident in the mess hall during dinnertime, and leaving it for each person present to disprove actual participation in the disturbance. These misbehavior reports fall well below the particularized individual descriptions of misconduct held sufficient in Vega to constitute proof of the charges. And they fare no better when compared with the report held sufficient in Vogelsang — also charges growing out of a prison riot — where the report clearly spelled out the particulars of the offensive conduct attributed to petitioner (66 NY2d, at 837, supra).
In the cases before us, the failure of the Commissioner to follow his own regulations in the reports by specifying an inmate’s misconduct must be considered a material defect (see *650 also, Matter of Garcia v LeFevre, 64 NY2d, at 1003, supra). Both petitioners admitted their presence in the mess hall during the dinnertime disturbance, but denied any participation in the group action. The issue concerning which the reports are silent — the individuals’ participation in a riot during which more than 130 other inmates also were present —was thus the very issue in question at the disciplinary hearings. Thus, the misbehavior reports cannot by themselves be considered substantial evidence that petitioners participated in the riot. Since the determination of petitioner Bryant’s guilt rests solely upon these reports, we conclude that that determination must be annulled.
There remains for consideration, as to Serrano only, the information received from the inmate informant, who stated that he had seen Serrano throw trays and plates at officers. The Appellate Division declined to rest its conclusion as to Serrano’s guilt on this evidence, and dismissed such information with respect to the other inmates who were also before the court, noting that "[t]his is precisely the kind of third-party credibility assessment that we have repeatedly held insufficient to support a determination (see, Matter of Kalonji v Coughlin, 157 AD2d 941 [whether confidential informants were indeed credible, as the witness maintains, is an assessment to be made by the Hearing Officer, not the witness]; Matter of Nelson v Coughlin, 148 AD2d 779, 780).” (160 AD2d 1160, 1161.)
Before this Court, respondent urges only that there was substantial evidence apart from the confidential material, and that any error in considering that evidence was harmless. In that we disagree with the first proposition — the other reports of Serrano’s misconduct do not constitute substantial evidence of guilt — we need not and do not address the further proposition that the admission of the confidential information against Serrano was harmless error.
Accordingly, in each case, the Appellate Division judgment should be reversed, without costs, respondent’s determination annulled, and respondent directed to expunge all references to the proceeding from petitioner’s files.
Chief Judge Wachtler and Judges Simons, Alexander, Hancock, Jr., and Bellacosa concur; Judge Titone taking no part.
In each case: Judgment reversed, etc.