**Frank ZAVARO, Plaintiff,**

v.

**Thomas A. COUGHLIN, III, and C.R. Homrighouse, Defendants.**

No. Civ–88–1331.

United States District Court, W.D. New York.

Sept. 20, 1991.

Frank Zavaro, pro se.

John M. Regan, Jr., Rochester, N.Y., pro bono, for plaintiff.

Carlos Rodriguez, Asst. Atty. Gen., Rochester, N.Y., for defendants.

## DECISION AND ORDER

TELESCA, Chief Judge.

### I. INTRODUCTION

Plaintiff Frank Zavaro, a prisoner currently incarcerated at a New York State

correctional facility, brought[1] this action pursuant to 42 U.S.C. § 1983, alleging that his due process rights were violated when he was punished pursuant to a disciplinary hearing in which the prison hearing officer impermissibly relied on the uncorroborated testimony of confidential informers. The plaintiff names as defendants Thomas Coughlin, the Commissioner of New York State Correctional Services, and C.R. Homrighouse, captain in the New York State Correctional Services who acted as a hearing officer in plaintiff's disciplinary hearing, both of whom he sues in their official and individual capacities.

On the basis of a favorable judgment in a prior state proceeding, the plaintiff has moved for summary judgment on the issue of liability. Defendants have cross-moved for summary judgment. For the reasons stated below, plaintiff's motion is granted as to defendant Homrighouse in his individual capacity and denied in all other respects; defendants' motion is granted as to defendant Coughlin and as to defendant Homrighouse in his official capacity.

## II. BACKGROUND

The disciplinary charges arose out of a mess hall riot at Great Meadows Prison July 31, 1988. Plaintiff admits that he was present when the riot occurred, but denies any personal involvement. That same day, plaintiff was written up in an Inmate Misbehavior Report charging him with a violation of a prison regulation against "violent conduct or conduct involving the threat of violence which creates an immediate danger to life, health, or facility security." The Misbehavior report states:

> On 7/31/88, at approximately 3:42 p.m., a riot situation erupted in the North Messhall (sic). This incident included numerous assaults on staff by participants. The assaults included use of weapons,

throwing of objects (trays, water pitchers, dishes, etc.) and striking with fists. Subject inmate was identified as being in the messhall during this riot. Employees on the scene verified that all inmates in the messhall were actively participating in this riot. This situation necessitated the discharge of chemical agents to regain control. Upon discharge, several inmates did flee the area. Those remaining were placed in a prone position on the floor. Identification of subject inmate was by departmental I.D. card and during the chemical agent decontamination process.

Defendant Homrighouse presided as the hearing officer at plaintiff's subsequent Tier III disciplinary hearing. Captain Homrighouse read into the record the signed eye witness statements of four prison employees[2] stating that "*all*" of the inmates who were present in the hall participated in the riot. No eye witness report even mentioned the plaintiff. Captain Homrighouse also referred to reports indicating that two unnamed confidential informants had stated that plaintiff had thrown food trays and dishes during the riot.

Homrighouse found[3] plaintiff guilty on the disciplinary charges. His punishment—two years' confinement to a Special Housing Unit ("SHU"), loss of two years' good time credits, and six months' loss of packages—was subsequently modified downward to one year's incarceration in SHU, a loss of one year of good time credit, and 6 months' loss of packages.

The plaintiff subsequently commenced an Article 78 proceeding to challenge his punishment. The matter was transferred to the Appellate Division pursuant to N.Y.Civ.Prac.L. & R. § 7804(g) (substantial evidence issue). In a Decision and Order dated April 19, 1990, the Appellate Division

---

1. Although Mr. Zavaro commenced this action *pro se,* the court appointed counsel to represent him in 1989 and he was represented by counsel in this motion.

2. Sergeant Kevin Smith, Officers R. Adams and John Beecher, and civilian cook Edward Ross.

3. In making this determination, Captain Homrighouse expressly relied on the statement of Sergeant Smith, who was also the officer who wrote up the Misbehavior Report, plaintiff's acknowledgment that he was present in the mess hall, and the statements of the confidential informants.

held that plaintiff had been punished on the basis of

> the kind of third-party credibility assessment that we have repeatedly held insufficient to support a determination (citations omitted) ... [a]nd that the other evidence relied on by the Hearing Officer established nothing more than that [the plaintiff] was in the mess hall. Accordingly, there is insufficient support for this determination.

Plaintiff's counsel states that the Court of Appeals has affirmed this decision "in all respects," in an order to be reported at 77 N.Y.2d 642, 569 N.Y.S.2d 582, 572 N.E.2d 23.

Plaintiff now moves for partial summary judgment, stating that the preclusive effect of the judgment in the Article 78 proceeding warrants summary judgment for the plaintiff as to defendants' liability for the violation of his due process rights.

Defendants cross-move for summary judgment, stating, inter alia, that the Article 78 judgment has no preclusive effect in this action, that defendant Coughlin was not personally involved in the incidents alleged in the complaint, that neither defendant is properly sued in his official capacity, and that defendant Homrighouse is entitled to qualified immunity. The discussion below briefly addresses these issues in the order in which they dispose of the motions.

## III. DISCUSSION

### A. Personal Involvement

■ It is well settled law that "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), citations omitted, *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Relatedly, the mere fact that a defendant is in a high position of authority provides no basis for liability under § 1983. *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

In this case, plaintiff alleges that defendant Coughlin "ratified, conducted, condoned, sanction[ed, and] participated in the actions that caused the constitutional violations ..." The defendant's uncontroverted affidavit, however, together with the transcripted record of plaintiff's disciplinary hearing, establish that defendant Coughlin lacked the requisite personal involvement in the events of which plaintiff complains and that he is, therefore, entitled to summary judgment. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

### B. Defendants' Official Capacity

■ Plaintiff sues defendants in both their official and individual capacities. Following the Supreme Court's decision in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989), holding that neither a state nor its officials in such capacity are "persons" for purposes of § 1983 liability, such an action simply may not be sustained, and each defendant is entitled to summary judgment insofar as he is sued in his official capacity.

### C. Preclusion

■ The sole basis for plaintiff's motion for summary judgment is the preclusive effect of a favorable judgment in his prior Article 78 proceeding. Federal courts must give to a state court judgment the same preclusive effect as the courts of that state would in subsequent proceedings. U.S. Const. art. IV, § 1; 28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Migra v. Warren City Sch. Dist.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). In *Allen* the Supreme Court considered whether § 1983 modifies the operation of 28 U.S.C. § 1738 so that a state court judgment would receive less than normal preclusive effect in a federal § 1983 action and determined that *issues* actually litigated in a state court proceeding are entitled to the same preclusive effect in a subsequent § 1983 action brought in federal court as they would enjoy in the courts of the state where the judgment was rendered. In *Mi-*

*gra,* the Court determined that the preclusive effect of a state court judgment does not differ even as to federal law issues which a § 1983 litigant could have, but did not, fully and fairly litigate in the prior state proceeding. *Id.,* 465 U.S. at 85–86, 104 S.Ct. at 898.

Both this Court[4] and other courts of this Circuit[5] have had occasion to address the issue of the preclusive effect upon a subsequent § 1983 action of a judgment in an Article 78 proceeding. Several Second Circuit cases suggest that the preclusive effect of a judgment in an Article 78 proceeding may be quite limited in a subsequent § 1983 action. In *Davidson v. Capuano,* 792 F.2d 275 (2d Cir.1986), the Court held that since the New York court which had entertained and granted plaintiff's Article 78 petition had not had the power to award the full measure of monetary damages sought in a later § 1983 action, the prior proceeding did not act as a bar to the subsequent action; *see also Giano v. Flood,* 803 F.2d 769 (2d Cir.1986) and *Fay v. South Colonie Cent. Sch. Dist.,* 802 F.2d 21 (2d Cir.1986), *cf. Antonsen v. Ward,* 943 F.2d 198 (2d Cir.1991) (Prior Article 78 proceeding bars subsequent claim for attorney's fees but not subsequent claim for compensatory damages); *see also DeMartino v. N.Y.C. Transit Auth.,* Civ–86–2147, 1989 WL 27469 (E.D.N.Y. March 16, 1989) (Principles of issue preclusion apply to § 1983 action brought in federal court following an Article 78 proceeding.)

■ In this case, however, the preclusive effect of plaintiff's favorable Article 78 judgment is determined by more fundamental rules of res judicata: a judgment resulting from a prior proceeding may only bind a party, or one in privity with such a party, who had a full and fair opportunity to litigate the issue or claim in the prior proceeding. *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645,

649–50, 58 L.Ed.2d 552 (1979). Defendant Coughlin was named as a respondent in plaintiff's Article 78 proceeding only in his official capacity. Thus, he had no opportunity to raise defenses which are available to him here, including lack of personal involvement and qualified immunity. Defendant Homrighouse was not even sued in that proceeding. Under the particular circumstances of this case, the Article 78 judgment has no preclusive effect.

## D. Qualified Immunity

The disposition of plaintiff's motion as against Homrighouse in his official capacity does not determine the motion against Homrighouse individually. That issue presents a question which turns on Homrighouse's right to a qualified immunity defense.

■ A state official may establish a right to qualified immunity from suit and from liability by showing (i) that it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by federal statute or by the Constitution, (ii) or that it was not clear at the time whether an exception permitted such acts, or (iii) that it was objectively reasonable for the official to believe that his actions did not violate any such protected right. *See Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987); see also *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987).

A prisoner's right to due process in prison discipline matters was clearly established well before 1988, when plaintiff's disciplinary hearing occurred. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). But

> the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to appropriate restrictions imposed by the nature of the regime to which they

**4.** *Donofrio v. Bringewatt,* Civ–88–978, Decision and Order dated July 31, 1989.

**5.** *See, e.g., Antonsen v. Ward,* 943 F.2d 198 (2d Cir.1991); *Polur v. Raffe,* 912 F.2d 52 (2d Cir.1990); *Fox v. Coughlin,* 893 F.2d 475 (2d Cir.1990); *Guiterrez v. Coughlin,* 841 F.2d 484 (2d Cir.1988); *Fay v. South Colonie Cent. Sch. Dist.,* 802 F.2d 21 (2d Cir.1986); *Davidson v. Capuano,* 792 F.2d 275 (2d Cir.1986); *see also Huertas v. Coughlin,* 1991 WL 173015 (S.D.N.Y.1991); *Natale v. Koehler,* 1991 WL 130192 (S.D.N.Y.1991).

have been lawfully committed. Citations omitted. Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a [criminal] defendant does not apply. Citation omitted. In sum, there must be a mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application. *Id.,* 418 U.S. at 557–58, 94 S.Ct. at 2975.

*See also Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983):

[It is] well settled that only a limited range of interests fall within this provision. Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States ... [and the courts] have consistently refused to recognize more than the most basic liberty interests in prisoners.

In the context of prisoner disciplinary hearings, the Supreme Court has held that "the requirements of due process are satisfied if *some evidence* supports the decision of the [prison administrator.]" *Sup't. Mass. Correc. Inst. v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). Should the actions of a prison official fail to meet even this minimum due process accorded to prisoners in the context of disciplinary proceedings, qualified immunity may still bar liability for a due process violation unless the particular "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. at 639–41, 107 S.Ct. at 3039; *see also Kaminsky v. Rosenblum,* 929 F.2d 922 (2d Cir.1991) (If a right is so generalized that its application in the factual context of the case is subject to doubt, the immunity defense may bar the action.)

■ The Second Circuit has implicitly acknowledged that a federal court may look to applicable state law to determine whether a constitutional right is well established. *Williams v. Smith,* 781 F.2d 319, 322 (1986); *Compare Smith v. Coughlin,* 938 F.2d 19 (2d Cir.1991) (Determining the availability of qualified immunity on the basis of pre-existing New York law) *with Eng v. Coughlin,* 858 F.2d 889, 897 (2d Cir.1988) (Citing Second Circuit case law to the effect that a right is only "clearly established" by prior holdings of federal courts.)

■ New York courts have firmly established a prisoner's fundamental right to due process in prison disciplinary proceedings. *Jones v. Smith,* 64 N.Y.2d 1003, 1005, 489 N.Y.S.2d 50, 478 N.E.2d 191 (1985) and, by implication, have established that adjudication in such proceedings which is not based on substantial evidence constitutes a violation of a prisoner's right to due process. *See Nelson v. Coughlin,* 148 A.D.2d 779, 780, 538 N.Y.S.2d 360 (3d Dept. 1989) (Third-party credibility assessment insufficient as a matter of law to support disciplinary determination) and cases cited therein; *Alvarado v. LeFevre,* 111 A.D.2d 475, 476, 488 N.Y.S.2d 856 (3d Dept.1985) (Uncorroborated hearsay "is insufficient in the eyes of the law [and] is no evidence at all,"), citation omitted; *Wynter v. Jones,* 135 A.D.2d 1032, 522 N.Y.S.2d 966 (3d Dept.1987). Thus, the specific conduct alleged by plaintiff as a violation of his due process rights—reliance upon uncorroborated hearsay by a hearing officer in a prison disciplinary hearing—had been determined to be unreasonable by the New York courts well before 1988, when the complained-of events occurred.

Upon a review of the undisputed record of plaintiff's disciplinary hearing and the resulting punishment, I am compelled to agree with the conclusion of the Appellate Division in plaintiff's Article 78 proceeding, that Captain Homrighouse adjudicated plaintiff guilty of violating prison rules on the basis of patently deficient evidence—on uncorroborated statements of confidential informants and signed statements of eye witnesses which contain *absolutely no* reference to the plaintiff. While that court characterized the deficiency in terms of insufficient evidence and made no statement concerning a due process violation, I find that Homrighouse's actions unequivocally failed to meet even the minimum due process standards which the law has set for such prison proceedings.

Finally, the defense of qualified immunity is not available to defendant Homrighouse in this case. The rights which he violated were clearly established in 1988, *see Hill,* 472 U.S. at 455–56, 105 S.Ct. at 2774 and *Alvarado,* 111 A.D.2d at 476, 488 N.Y.S.2d at 857; no exception to these rights is involved in this case; and I find, as a matter of law, that defendant Homrighouse could not reasonably have believed that his actions did not violate the plaintiff's rights. *See Krause v. Bennett,* 887 F.2d 362, 368 (1989).

WHEREFORE, plaintiff's motion for summary judgment is granted insofar as it seeks the imposition of liability upon defendant Homrighouse in his individual capacity and is denied in all other respects; defendants' cross-motion for summary judgment is granted as to defendant Coughlin and the action is dismissed as to him; it is granted as to defendant Homrighouse in his official capacity and the claim against Captain Homrighouse in his official capacity is dismissed; and the parties are directed to confer with the Court in order to set a hearing to determine the plaintiff's damages on the remaining claim.

ALL OF THE ABOVE IS SO ORDERED.