◼ In the Matter of ROBERT COLLINS et al., Petitioners, v THOMAS A. COUGHLIN, III, as Commissioner of the Department of Correctional Services, Respondent.—Casey, J. P. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review determinations of the respondent finding petitioners guilty of violating various prison disciplinary rules.

Since the commencement of this CPLR article 78 proceeding, petitioners John Diaz and Clemon Guda have withdrawn. The remaining four petitioners attack the determinations made against them as lacking substantial evidentiary support. The incident giving rise to this proceeding commenced at about 10:30 A.M. on August 1, 1988 at Coxsackie Correctional Facility in Greene County, where petitioners and others were then confined to the special housing unit (hereinafter SHU). At that time, inmates confined to SHU gained control of the area and took five correction officers hostage. The hostages were threatened and physically assaulted, and between $50,000 and $75,000 worth of property damage was incurred. The incident terminated at about 12:37 A.M. on August 2, 1988 when the inmates released the hostages and left SHU. Based on this incident, petitioners, who had been transferred to other correctional facilities, were served there with misbehav-

ior reports that were identical, except for the inmate's name, number and cell location. Petitioners were charged with having violated six rules of inmate behavior and the reports contained a written description of the incident that prompted the charges. The following rules were alleged to have been violated: rule 100.10 (assault), rule 100.20 (conduct disturbing the order of the facility), rule 102.10 (threats), rule 104.10 (takeover of an area facility), rule 104.12 (participating in an action which may be detrimental to the order of the facility) and rule 116.10 (destruction of State property).

Petitioners Clarence Smith and Robert Collins had been transferred to Elmira Correctional Facility in Chemung County. Their Tier III hearings were conducted at that facility on August 16 and 19, 1988. Petitioners Dennis Prewitt and Charles Rivers had been transferred to Auburn Correctional Facility in Cayuga County where their Tier III hearings were conducted on August 14 and 23, 1988. Following their hearings, Smith and Collins were found guilty of having violated rule 104.12 and not guilty of the other charges. Each was sentenced to 30 months' confinement in SHU with loss of privileges and 30 months' loss of good time. Following administrative review, this penalty was reduced to three months' confinement with loss of privileges and three months' loss of good time. Prewitt and Rivers were found guilty of all charges and were sentenced to 720 days' confinement to SHU with loss of privileges and two years' loss of good time. The penalty against Rivers was subsequently reduced to six months' confinement with loss of privileges and six months' loss of good time.

Collins was the only witness to testify at his hearing. Although he had pleaded not guilty to the charges, he admitted that he left the confinement of his cell and walked around SHU during the incident. Based upon this admission and the hearing report, Collins was found guilty of a violation of rule 104.12 and not guilty of the remaining charges.

Smith also pleaded not guilty to all of the charges. He testified at his hearing that he had been locked in his cell when the incident began and remained there, except for two occasions. At Smith's request, Guda was interviewed and stated that although Smith was confined when the incident began, Smith was "walking around" later. Having been shown to have been free of the confinement of his cell and based on the misbehavior report, Smith was also found guilty of having violated rule 104.12 and not guilty of the remaining charges.

Prewitt, having also pleaded not guilty to all of the charges, stated that he had been confined to his cell when the incident began and remained confined for the entire takeover period. Pursuant to petitioner's request, the Hearing Officer interviewed the correction sergeant who wrote the misbehavior report, as well as several other inmates. The sergeant testified that his preliminary and ongoing investigation revealed Prewitt's involvement in the incident, although he could not recall seeing Prewitt's face. The inmates interviewed cleared Prewitt of any involvement. Before issuing his decision, the Hearing Officer noted that Prewitt had requested a copy of the unusual incident report. This report contained medical reports regarding the condition of the hostages and the inmates shortly after restoration of order. Prewitt was found to have suffered groin pain, a tender painful knee and inguinal region discomfort. Significantly, Prewitt refused to attend the continuation of his hearing when it resumed after he had received this unusual incident report. Accordingly, Prewitt was found guilty of all charges against him.

Rivers also pleaded not guilty and claimed that he was in his cell when the incident began. He admitted later in his testimony that he left his cell for 10 to 15 minutes and again when he stood by the door of SHU with the other inmates and hostages when the takeover ended. Two other inmates placed Rivers outside his cell. Prewitt testified that Rivers remained in his cell at all times. Based upon the testimony of the correction sergeant who signed the misbehavior report that Rivers was outside his cell and minimally involved in the incident, the Hearing Officer found Rivers guilty of all charges.

It appears that during the hearing, Rivers asserted that the misbehavior report was false. The Hearing Officer queried why that could be so when such falsity would jeopardize the job of the officer who prepared it. Rivers and Prewitt contend that this query shows the lack of impartiality of the Hearing Officer. We disagree that such a query violated the standard prescribed in *Wolff v McDonnell* (418 US 539, 571), which only requires sufficient impartiality so as not to present "a hazard of arbitrary decisionmaking". The record here demonstrates that the Hearing Officer went out of his way to insure a fair hearing to Rivers and Prewitt, contrary to petitioners' contention. All of the witnesses requested by these petitioners were interviewed and the determination of guilt of all petitioners was adequately supported by substantial evidence, satisfying the requirement of *People ex rel. Vega v Smith* (66 NY2d 130,

139). Accordingly, the determinations appealed from should be confirmed and the petition dismissed.

Determinations confirmed, and petition dismissed, without costs. Casey, J. P., Weiss, Mercure and Harvey, JJ., concur.

Levine, J., dissents and votes to annul in a memorandum. Levine, J., (dissenting). The petition should be granted since the determinations at issue are not supported by substantial evidence. The misbehavior reports served on petitioners contained identical charges and set forth the same general description of the incident: "One *[sic]* August 1, 1988, beginning at approximately 10:30 a.m., while confined to the Coxsackie Correctional Facility Special Housing Unit the above mentioned inmate, acting in concert with other inmates so confined, engaged in the take over of the unit by force. Said action resulted in the taking over of five (5) Correction Officer employees as hostages. Said hostages subjected during the course of fourteen (14) hours to acts of assault, multiple attempts to inflict bodily harm, threats both spoken and by gesture. The overall act resulted in extreme violent conduct, since these inmate actions during the incident disturbed the order of the facility and created immediate danger to life, health and facility security. Additional actions of this inmate while acting in concert resulted in considerable damage to the unit and other state property."

The reports were prepared by Thomas McKernon, a correction officer who was stationed just outside one of the doors to the special housing unit during the incident. The reports, however, were not indorsed by any of the correction officers who had been taken hostage, nor is there any evidence indicating that McKernon actually witnessed acts of misconduct by any of petitioners. To the contrary, McKernon, who testified at the hearings for petitioners Charles Rivers and Dennis Prewitt, admitted that he lacked firsthand knowledge of their involvement in the disturbance. McKernon testified that charges were brought against Rivers and Prewitt as a result of an "ongoing investigation", but he failed to identify the source of his information or provide any further details concerning the alleged rule violations. Thus, there was no basis upon which the Hearing Officer could make an independent assessment of the credibility of the information that petitioners were involved in the incident. Consequently, neither the misbehavior report nor the testimony of McKernon was sufficient to constitute substantial evidence *(see, Matter of Silva v Scully,* 138 AD2d 717, 718; *Matter of Wynter v Jones,* 135 AD2d 1032, 1033).

Nor am I persuaded that the testimony by petitioners Robert Collins, Clarence Smith and Rivers, in which they acknowledge leaving their cells during the disturbance, is itself a sufficient basis to find them guilty of any of the charges contained in the misbehavior reports. In the absence of any evidence that petitioners did more than simply "walk around" during the disturbance, this conduct does not constitute a violation of rule 104.12, which provides that an inmate "shall not *lead, organize, participate* or *urge* other inmates to participate in work-stoppages, sit-ins, lock-ins or other action which may be detrimental to the order of the facility" (7 NYCRR 270.1 [b] [5] [iii] [emphasis supplied]). In the case of Rivers, the admission that he was outside his cell, without any further evidence of wrongdoing, certainly did not provide a basis for finding him guilty of the additional charges of assault, threats, conduct disturbing the order of the facility, takeover of an area of the facility, and destruction of State property.

Finally, as to Prewitt, the majority concludes that the determination in his case is supported by the additional evidence contained in the unusual incident report. The Hearing Officer, however, never discussed the contents of the report on the record, nor did he rely on it in reaching his disposition. Consequently, this court cannot consider the report in determining whether respondent's disposition is supported by substantial evidence *(see, Matter of Brestin v Commissioner of Educ. of State of N. Y.,* 116 AD2d 357, 359-360).

In light of the foregoing, I would grant each petition and order expungement *(see, Matter of Hartje v Coughlin,* 70 NY2d 866; *Matter of Wynter v Jones, supra,* at 1034).