In the Matter of GARY TAYLOR, Petitioner, v THOMAS A. COUGHLIN, III, as Commissioner of the Department of Correctional Services, Respondent.—Mahoney, P. J.

Petitioner was a prisoner at Great Meadow Correctional Facility in Washington County when, on July 31, 1988, disturbances occurred in the mess hall and, later, in the big yard. Petitioner was charged with and found guilty of violating disciplinary rule 104.10 (violent conduct or threat of violent conduct; *see,* 7 NYCRR 270.1 [b] [5] [i]) in connection with the big yard disturbance.* A penalty of two years' confinement in the special housing unit, including loss of commissary, phone and package privileges, was imposed.

At a Tier III Superintendant's hearing, petitioner testified that on July 29, 1988 he met with Chaplain Abdullah Raheem

---

* The charge involving the mess hall incident was dismissed and is not at issue herein.

and informed him that he had information that there was going to be a disturbance in the mess hall between inmates and officers. Acting upon the Chaplain's advice, petitioner, who was the inmate Imam, the elected leader and spiritual advisor of the members of the Muslim congregation, advised his fellow Muslims to avoid any controversy. On the afternoon of July 31, 1988, again in response to a rumor that there was going to be a disturbance in the mess hall, petitioner told the Muslims not to go to the mess hall but to stay with him in the big yard. An incident did occur in the mess hall and when officers began running out of the building, apparently affected by gas, petitioner told the Muslims to gather together at a point in the big yard separate and apart from the area where other inmates were assembled.

At this point, Correction Lieutenant T. R. Fitzgerald, using the public address system, ordered all inmates to proceed to the mess hall gate. Petitioner, having overheard inmates discussing whether they should rush the officers at the gate, directed his group of Muslims away from the larger body of inmates until such time as he was satisfied that it was safe to direct them to join the inmate population moving toward the mess hall gate. The movement of the enlarged group of inmates created a control condition which prompted Fitzgerald to order the group to stop. When they refused, Fitzgerald attributed their disobedience to petitioner. In respondent's view, Fitzgerald's misbehavior report, coupled with petitioner's admissions, provided substantial evidence supportive of respondent's determination of guilt.

We disagree. In finding petitioner guilty of violating disciplinary rule 104.10, the Hearing Officer necessarily had to conclude from the evidence that petitioner took action intended to or resulting in the takeover of the facility, or acted in a group engaged in violent conduct or conduct involving the threat of violence which created an immediate danger to life, health or facility security (7 NYCRR 270.1 [b] [5] [i]). The proof, previously summarized, does not support such a conclusion. Fitzgerald's report does not single out the Muslim inmates as being solely responsible for any threat of violence which created an immediate danger to life, health or facility security. Rather, he attributed such threat to the failure of "all" inmates in the big yard to accede to his order to cease their advance upon the mess hall gate. Further, the Hearing Officer failed to seriously consider petitioner's explanation of what actually occurred. Rather, the Hearing Officer made a conclusory assumption of culpability based on petitioner's

admission that he initially directed his fellow Muslims to stand apart from other inmates in the big yard because he believed such inmates were going to rush the officers at the mess hall gate, without giving any weight to the fact that petitioner ordered his followers to join the others when the danger abated. This assessment was erroneous *(see, Matter of Cook v Coughlin,* 97 AD2d 663; *Matter of De Mauro v LeFevre,* 91 AD2d 1156, 1157; *Matter of Santana v Coughlin,* 90 AD2d 947). Serious consideration of petitioner's testimony may have substantiated a justification defense or at least have worked to mitigate his behavior *(see, Matter of Cook v Coughlin, supra).* Accordingly, we conclude that the determination is unsupported by substantial evidence.

Moreover, it also appears that petitioner's regulatory and constitutional rights to call witnesses in his behalf were violated *(see, Wolff v McDonnell,* 418 US 539, 566). During the course of an inmate disciplinary hearing, the inmate has the right to "call witnesses on his behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals" (7 NYCRR 254.5 [a]). Here, petitioner requested certain Muslim inmates who were present in the yard during the incident to testify in his behalf. The Hearing Officer denied this request stating, "The testimony of Muslim inmates on call-outs [is] * * * cumulative and redundant as * * * Civilian [Chaplain] Raheem testified to same things the inmate witnesses could have." It is difficult, if not impossible, to perceive how the testimony of inmate eyewitnesses to the events in the big yard could be "cumulative and redundant" to testimony of the prison chaplain who was not present in the yard as the events giving rise to the charges against petitioner unfolded. Indeed, neither Chaplain Raheem nor any other witness petitioner was permitted to call was present in the yard during the incident.

In light of the Court of Appeals holding in *Matter of Barnes v LeFevre* (69 NY2d 649), we conclude that petitioner was impermissibly denied his right to call a witness in violation of respondent's own regulations *(see, Matter of Wong v Coughlin,* 137 AD2d 272). The Hearing Officer's assumption, based upon conjecture or surmise, that the testimony of the requested witnesses would be duplicative or redundant is not a sufficient basis for the denial of petitioner's request in this case *(see, Matter of Fox v Dalsheim,* 112 AD2d 368, 369).

Determination annulled, without costs, petition granted, and respondent is directed to expunge all references to this

proceeding from petitioner's files. Mahoney, P. J., Kane, Mikoll, Yesawich, Jr., and Mercure, JJ., concur.