In the Matter of JOHN HILLARD, Petitioner, v THOMAS A. COUGHLIN, III, as Commissioner of the Department of Correctional Services, Respondent.

Third Department, February 4, 1993

APPEARANCES OF COUNSEL

*Sarah Betsy Fuller,* Prisoners' Legal Services, Ithaca, for petitioner.

*Robert Abrams, Attorney-General,* Albany *(John McConnell, Nancy A. Spiegel* and *Martin A. Hotvet* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, J.

Petitioner was served with a misbehavior report which alleged violations of Department of Correctional Services rules 104.10 (rioting *[see,* 7 NYCRR 270.2 (B) (5) (i)]) and 109.11 (leaving an assigned area without authorization *[see,* 7 NYCRR 270.2 (B) (10) (ii)]) as a result of his participation in the May 28-29, 1991 takeover of the outdoor exercise yard to A-Block at Southport Correctional Facility in Chemung County. The report, authored by Correction Officer R. Farrell, alleged, *inter alia,* that petitioner was "personally identified in the A-block Yard as a participant in the takeover" and despite "several opportunities to leave the yard * * * continued to participate".

On June 11, 1991, petitioner's disciplinary hearing commenced. Petitioner pleaded guilty with an explanation to the charge of leaving an assigned area and not guilty to the riot charge. Petitioner testified that he had been forced from his recreational pen by tear gas and, although he attempted to return to the pen, the tear gas prevented him from doing so. Petitioner also stated that he had covered his face during the riot so as not to be identified, that he was never given an opportunity to leave the yard and, even if given the opportunity, other inmates had barricaded the exits. Farrell and Correction Sergeant Field, testifying by telephone, each affirmed the accuracy of the misbehavior report. Field also stated that although petitioner was a participant, he was not, in Field's view, an "active" participant in the affair. Petitioner did not call any other witness, but did request the opportunity to examine certain photographs and videotapes of the riot. The videotapes consisted of a black and white film taken from a fixed point showing the incident from the beginning and a color film taken with a hand-held camera from different perimeter points commencing some 20 minutes after the start of the riot. This request was denied.

On June 27, 1991, between the second and third days of

petitioner's hearing, the Hearing Officer, along with several other Hearing Officers required to conduct disciplinary hearings arising from the Southport riot, viewed the videotapes and photographs of the incident. In later affidavits describing the viewing session, the Hearing Officer stated that he had "limited discussion, in general terms, about the Southport riot" and did not discuss specific issues regarding petitioner, and James Raymond, an investigator with respondent who made the presentation, averred that "any information communicated by me * * * was general in nature, and solely for purposes of orienting the officers to the events shown in the visual materials".

Thereafter, the Hearing Officer resumed petitioner's disciplinary hearing and found petitioner guilty of both charges, citing the misbehavior report, the testimony of Farrell and Field, and his review of the videotapes. The Hearing Officer indicated that although he could not identify petitioner in the videotapes, he was unable to observe any unwilling participants in the riot on the basis of his viewing of the video evidence. Petitioner was sentenced to 30 months' confinement in a special housing unit, two years' loss of good time and 30 months' loss of various privileges. Following unsuccessful administrative review, petitioner brought this CPLR article 78 proceeding to annul the determination.

Initially, the misbehavior report, confirmed by the testimony of Farrell and Field, the videotape evidence that the inmates achieved a swift and uniform departure from the four-man exercise pens in A-Block yard at the start of the uprising, and petitioner's testimony that he concealed his face during the riot provide substantial evidence supporting both findings of guilt (see, Matter of Foster v Coughlin, 76 NY2d 964, 966; People ex rel. Vega v Smith, 66 NY2d 130, 139-140; Matter of Williams v Coughlin, — AD2d —, 1993 NY Slip Op 647 [decided herewith]; Matter of Torres v Coughlin, 161 AD2d 1080, 1082; Matter of Smith v Coughlin, 161 AD2d 1082, 1083; Matter of Collins v Coughlin, 156 AD2d 793, lv denied 75 NY2d 707; cf., Matter of Bryant v Coughlin, 77 NY2d 642; Matter of Bettis v Coughlin, 186 AD2d 1080; Matter of Taylor v Coughlin, 158 AD2d 881, 882-883).

Petitioner further contends that several procedural errors warrant annulment. We reject petitioner's arguments that the misbehavior report did not sufficiently describe his alleged misconduct (see, Matter of Williams v Coughlin, — AD2d —,

*supra)* and that he was denied due process by respondent's failure to record the June 27, 1991 session *(see, supra)*. There is merit, however, to the claim that petitioner was denied due process by respondent's refusal to show him the videotapes and photographs that the Hearing Officer reviewed.* Petitioner argues that he was accordingly denied the opportunity to explain the significance of what the Hearing Officer saw as it related to his defense. Respondent counters that the videotapes were properly withheld from petitioner on institutional security grounds because the evidence "would constitute a veritable seminar on the conduct of a facility takeover".

To be sure, inmates at disciplinary proceedings are not entitled to the full panoply of rights due a criminal defendant or administrative law rules designed for free citizens *(see, Wolff v McDonnell,* 418 US 539, 560; *Matter of Laureano v Kuhlmann,* 75 NY2d 141, 146). However, an inmate "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals" *(Wolff v McDonnell, supra,* at 566; *see, Matter of Amato v Ward,* 41 NY2d 469, 472-473; *see also,* 7 NYCRR 252.3 [a] [3]; 254.6 [c]). Some evidence relied upon by a Hearing Officer may remain confidential, provided the confidential documents are "submitted to the reviewing court for *in camera* inspection [and] * * * the hearing officer must, at the time of the hearing, inform the inmate that he will consider certain information which will remain confidential and articulate some reason for keeping the information confidential" *(Matter of Boyd v Coughlin,* 105 AD2d 532, 533; *see, Matter of Freeman v Coughlin,* 138 AD2d 824). "Concerns for institutional safety may rationally be invoked to defend limitations on prisoners' constitutional rights * * * provided the request is 'reasonably related to legitimate security interests' *(Turner v Safley,* 482 US 78, 91)" *(Matter of Grochulski v Kuhlmann,* 176 AD2d 1111, 1113, *lv denied* 79 NY2d 755).

Here, although the Hearing Officer told petitioner that he would consider the videotapes and that petitioner would not see the evidence because "other inmates are there" *(see, Matter of Boyd v Coughlin, supra,* at 533), petitioner, if given an opportunity to view the tapes, could have "informed the

---

* Petitioner exhausted his administrative remedies as he requested to view the photographic evidence at the hearing and raised the issue on administrative appeal *(cf., Matter of Gonzales v Coughlin,* 180 AD2d 974, 975).

[Hearing Officer] how to identify him on the tape" *(see,* 7 NYCRR 254.6 [c]) and could have commented upon any adverse evidence. Because the videotapes played a significant role in the Hearing Officer's determination, and the explanations of the Hearing Officer and respondent as to why petitioner could not view the evidence do not adequately articulate "institutional safety and inmate privacy considerations" *(Matter of Bernier v Mann,* 166 AD2d 798, 799), petitioner has been denied his regulatory right to reply to the evidence against him (7 NYCRR 254.6 [c]; *cf., Matter of Laureano v Kuhlmann,* 75 NY2d 141, 146-148, *supra; Matter of Shaffer v Hoke,* 174 AD2d 787, 788; *Matter of Breland v Senkowski,* 168 AD2d 751, 752).

In these circumstances, it is our view that a new hearing, not expungement, is the appropriate remedy. Expungement is required only when (1) the challenged disciplinary determination is not supported by substantial evidence *(see, Matter of Hartje v Coughlin,* 70 NY2d 866; *Matter of Wynter v Jones,* 135 AD2d 1032, 1033-1034); (2) there has been a violation of one of the inmate's fundamental due process rights, as enunciated in *Wolff v McDonnell* (418 US 539, *supra; see, Matter of Torres v Coughlin,* 166 AD2d 793; *Matter of Rosario v Selsky,* 162 AD2d 939, 940-941; *Matter of Taylor v Coughlin,* 158 AD2d 881, 883, *supra; Matter of Garcia v LeFevre,* 102 AD2d 1004, 1005 [dissenting mem], *revd* 64 NY2d 1001); or (3) other equitable considerations dictate expungement of the record rather than remittal for a new hearing *(see, e.g., Matter of Williams v Coughlin,* 145 AD2d 771; *Matter of Curry v Kelly,* 144 AD2d 1014; *Matter of Allah v LeFevre,* 132 AD2d 293, 295; *Matter of Cunningham v LeFevre,* 130 AD2d 809, 810). None of the recognized exceptions apply here. We have already concluded that the administrative determination was supported by substantial evidence and the denial of petitioner's request to view the photographs and videotapes implicated only the right to confrontation and cross-examination, expressly excluded from the panoply of inmate due process rights *(Wolff v McDonnell, supra,* at 567-569; *see, Matter of Smith v Coughlin,* 137 AD2d 938, 939). Finally, we are not persuaded that equity requires expungement.

WEISS, P. J., YESAWICH JR., CREW III and CASEY, JJ., concur.

Adjudged that the determination is annulled, without costs, and matter remitted to respondent for further proceedings not inconsistent with this Court's decision.