[600 NYS2d 285]

In the Matter of EDUARDO MARQUEZ, Petitioner, v LOUIS MANN, as Superintendent of Shawangunk Correctional Facility, et al., Respondents.

Third Department, July 8, 1993

**APPEARANCES OF COUNSEL**

*Geri Pomerantz, Stephen Latimer* and *Deborah Schneer,* Poughkeepsie, for petitioner.

*Robert Abrams, Attorney-General,* Albany *(Martin A. Hotvet* and *Peter G. Crary* of counsel), for respondents.

**OPINION OF THE COURT**

LEVINE, J.

Following a physical altercation among correction officers (hereinafter COs), petitioner and Ramon Diaz, another inmate, correctional authorities at Shawangunk Correctional Facility in Ulster County ordered the transfer of petitioner and Diaz to the special housing unit (hereinafter the SHU) of the facility. When COs entered Diaz's cell ostensibly to escort him to the SHU, they proceeded to administer a totally unprovoked beating of Diaz and continued to assault him on the way to the SHU. Petitioner, whose cell was on the same cellblock as Diaz, observed the beating, which was also recorded on videotape by another CO using a hand-held video camera. Petitioner was apprehensive that he would also be beaten upon being transferred to the SHU. Accordingly, he tied a bed sheet around his cell bars to prevent entry. When the COs returned to get petitioner, he refused an order to untie the bed sheet and attempted to prevent the COs from doing so by throwing hot tap water at them and allegedly by

striking the COs with his fists. The COs eventually succeeded in gaining entry to petitioner's cell and then beat him with batons, fists and kicks, even after handcuffing and shackling him. They continued to physically abuse him enroute to the SHU and after arriving there. This was also videotaped. The assaults against petitioner and Diaz were investigated by the Department of Correctional Services, resulting in disciplinary charges against the COs involved in the incidents. Following arbitration hearings on the charges of misconduct, several COs were found guilty of using inappropriate and excessive force and penalties were imposed ranging from termination of State service to short suspensions.

Petitioner was charged with misconduct constituting violations of prison disciplinary rules in connection with the foregoing incident, i.e., assaulting staff, making threats and disobeying a direct order. Petitioner requested and received the appointment of an employee assistant to aid him in his defense. Petitioner denied the assault and threat charges and pleaded guilty, with an explanation, to the disobeying a direct order charge, testifying that his refusal to permit the COs to enter his cell was based on his fear that they would then beat him as they did Diaz.

At the tier III hearing, the CO who signed the misbehavior report (who had participated in bringing petitioner to the SHU but was not charged with misconduct) testified in support of the charges. Petitioner in his testimony denied any provocative or assaultive conduct. Several inmate witnesses testified in support of petitioner's version, and petitioner's employee assistant also testified regarding what he observed on the videotape of the incident. Petitioner requested that the videotape be shown so that he and his witnesses could view it and comment upon it. The Hearing Officer refused this request, stating that it was the "policy" not to allow inmates to view videotapes and that "the tapes are viewed by the assistant". At the conclusion of the hearing, the Hearing Officer sustained the charges, finding that petitioner's explanation for his resistance did not excuse his actions but only served to mitigate punishment. The Hearing Officer imposed the penalty of one year's confinement in the SHU.

Petitioner administratively appealed through counsel. Among the errors cited were the Hearing Officer's refusal to view the videotape and receiving evidence dehors the record. The latter objection was based upon the Hearing Officer's dispositional statement on the record that his findings were

based on his "review of this tape and other testimon[y]". Counsel for petitioner inferred that the reference to "this" tape was to the audio tape of the hearing, and that the reference to "other testimon[y]" was to evidence received outside of the hearing. On administrative appeal, the findings of petitioner's guilt were upheld but the penalty was reduced to six months in the SHU.*

Petitioner then brought the instant CPLR article 78 proceeding to challenge the determination claiming, inter alia, that his alleged misconduct was justified in self-defense against the reasonably anticipated criminally assaultive behavior of the COs, that there was no substantial credible evidence to sustain the charges, and that his right to present exculpatory evidence was denied by the Hearing Officer's refusal of petitioner's request to view the videotape of the incident out of which the charges arose. In respondents' answer, however, it is averred that the Hearing Officer actually did view the videotape and that it was the videotape that the Hearing Officer referred to in stating that he based his findings on a "review of this tape". After the proceeding was transferred to this Court, counsel for respondents definitively ascertained from the Hearing Officer that he had in fact viewed the videotape of the incident, and a stipulation was entered into by the parties hereto so stating, and providing for in camera viewing thereof by this Court.

█ On our review of the record, we find that the dispositive issue in this matter is the Hearing Officer's refusal to honor petitioner's request for access to the videotape of the incident at the hearing. By the Hearing Officer's own statement in announcing his resolution of the charges against petitioner, viewing the videotape played an important role in his determination. The Hearing Officer's explanation for his refusal, that there was a "policy" of the facility against affording inmates access to videotapes, is unsupported by any evidence in the record and, in any event, fails to articulate any justification for the denial of access to the videotape based upon concern for legitimate correctional goals or institutional safety. Therefore, at the very least, petitioner was denied his regulatory right to reply to the evidence against him (7 NYCRR 254.6 [c]; see, Matter of Hillard v Coughlin, 187 AD2d 136, lv denied 82

* Petitioner began serving his penalty in the SHU, but has since been released to the general prison population after receiving a time cut for good behavior.

NY2d 651; *cf., Francis v Coughlin,* 891 F2d 43, 47 [2d Cir] [holding that inmate has constitutional right to be informed of and comment upon the evidence used against him in a disciplinary proceeding]).

We reject respondents' contention that petitioner's right to reply regarding the use of the videotape as evidence was satisfied by affording his employee assistant access to the videotape. The right to reply is personal to petitioner and it would seem self-evident that his right to comment and explain the scenes portrayed on the videotape would be more effectively employed in his own defense when personally exercised than when exercised by someone who had not been present at the videotaped incident. To be sure, legitimate concern for institutional safety might dictate in a given case that the inmate's right in this regard must be limited to merely affording his employee assistant access to the videotape. To the extent that our decisions in *Matter of Rodriguez v Coughlin* (190 AD2d 919) and *Matter of Jenkins v Coughlin* (190 AD2d 937, *lv denied* 82 NY2d 651) may suggest that an inmate's right to reply regarding a videotape used as evidence against him may be satisfied by allowing his assistant to view the videotape, we limit any such holding to situations where a valid justification has been established for denying personal access to the videotape by the inmate.

We are likewise unpersuaded by respondents' alternative contention, that petitioner waived or failed to preserve for judicial review the denial of his right to view and comment on the videotape by not specifically setting forth this objection on his administrative appeal or in the petition herein. The record clearly establishes that petitioner was under an honest and reasonable misapprehension that the Hearing Officer had declined to honor his request to view the videotape, as stated in petitioner's submission on his administrative appeal. Although his misapprehension was, thus, disclosed to respondents during the administrative appeal, respondents did not correct the misapprehension until they answered the petition in the instant proceeding; it was at that point that, for the first time, petitioner was made aware that the videotape had been used as evidence against him, thereby triggering his right to reply. In view of such lack of awareness up to that point, petitioner's failure to make any objection based thereon at the tier III hearing or on administrative appeal cannot constitute an effective waiver of his right to reply *(see, Matter*

*of Garcia v LeFevre,* 64 NY2d 1001, 1003; *Matter of Lonski v Coughlin,* 126 AD2d 981, 982). Moreover, in view of the patent ambiguity in the Hearing Officer's statement regarding his "review" of "this tape", we find that petitioner's objection contained in his administrative appeal regarding the Hearing Officer's failure to view the tape sufficiently preserved his present objection regarding the Hearing Officer's use of the videotape to permit judicial review of that objection. In any event, we would under the circumstances presented here undertake judicial review of the denial of petitioner's right to reply in the exercise of our discretion in the interest of justice. Undisputably, the videotape was used as significant evidence against petitioner without affording him an opportunity to reply by viewing and commenting on the videotape; therefore, annulment is required *(see, Matter of Hillard v Coughlin, supra).* Furthermore, there clearly are equitable considerations in this entire matter dictating expungement of the record in petitioner's case.

MIKOLL, J. P., YESAWICH JR., CREW III and CASEY, JJ., concur.

Adjudged that the determination is annulled, with costs, petition granted and respondents are directed to expunge all references to the proceeding from petitioner's departmental and institutional files.