(March 7, 1996)

■ In the Matter of TIMOTHY DUMPSON, Petitioner, v LOUIS MANN, as Superintendent of Shawangunk Correctional Facility, et al., Respondents. [639 NYS2d 498] —White, J.

This proceeding arose out of a serious incident that occurred on March 22, 1993 at Shawangunk Correctional Facility in Ulster County that was instigated by petitioner's throwing of feces and milk at two correction officers. To prevent a future occurrence, respondent Superintendent of Shawangunk Correctional Facility directed that petitioner be moved to a cell with a fixed plexiglass shield. To effectuate the move, petitioner was ordered to place his hands through a hatch in his cell door so that mechanical restraints could be applied. He refused to comply and, after attempts to persuade him to do so failed, chemical agents were administered to the cell. Thereafter, several correction officers entered petitioner's cell, whereupon petitioner pulled a homemade six-inch metal shank from his pocket and began swinging his arms and hands wildly. While the officers were attempting to subdue him, petitioner stabbed one correction officer in the neck and finger and another in the arm. Petitioner, in turn, sustained, *inter alia*, a fracture of the right eye orbit. After he was subdued, petitioner was moved to the new cell and the next day transferred to Auburn Correctional Facility (hereinafter Auburn) in Cayuga County.

Petitioner's conduct generated a misbehavior report charging him with violating disciplinary rule 1.00 (7 NYCRR 270.2 [A] [conduct constituting a violation of the Penal Law]), rule 113.10 (7 NYCRR 270.2 [B] [14] [i] [possession of a weapon]), rule 100.11 (7 NYCRR 270.2 [B] [1] [ii] [assault on staff]) rule 106.10 (7 NYCRR 270.2 [B] [7] [i] [refusing to obey a direct order]), rule 107.10 (7 NYCRR 270.2 [B] [8] [i] [physical obstruction of an employee]) and rule 104.13 (7 NYCRR 270.2 [B] [5] [iv] [creating a disturbance]). The charges were sustained in a Superintendent's hearing, and a penalty of two years of solitary confinement and loss of privileges was imposed. Following the administrative reversal of this hearing, a second hearing was commenced on July 4, 1993 which culminated on July 20, 1993 with findings of guilt and the imposition of a penalty of five years of solitary confinement and loss of privileges plus three years' loss of good time. On administrative appeal the Superintendent's hearing was affirmed, except that the penalty was reduced to two years of solitary confinement and loss of privileges plus three years' loss of good time. Petitioner then commenced this CPLR article 78 proceeding which has been transferred to this Court.

Petitioner contends that respondents' determination must be annulled because he was denied certain constitutional and

regulatory rights. Initially, petitioner argues that the Hearing Officer violated these rights by refusing to provide him with his medical records made at Auburn, photographs of his injuries, the medical records of the correction officers injured in the incident and incident reports prepared by the correction officers participating therein.

Given the fact that petitioner sought these documents to challenge the credibility of respondents' witnesses, the failure to provide them did not abridge his constitutional rights since an inmate in a disciplinary proceeding does not have a constitutional right to confront or cross-examine witnesses (*see, Matter of Abdur-Raheem v Mann*, 85 NY2d 113, 119; *Matter of Laureano v Kuhlmann*, 75 NY2d 141, 146). An inmate, however, does have a right to submit documentary evidence if relevant (7 NYCRR 254.6 [c]).

Inasmuch as the information contained in petitioner's medical records and depicted in the photographs of his injuries has no relationship to the charges set forth in the misbehavior report, we concur with the Hearing Officer that petitioner was not entitled to these documents. The correction officers' medical records and incident reports directly concern the subject incident and should have been provided to petitioner in the absence of a finding that disclosure would be unduly hazardous to institutional safety or correctional goals (*see, Matter of Hillard v Coughlin*, 187 AD2d 136, 139, *lv denied* 82 NY2d 651). However, the failure to provide these documents to petitioner does not require an annulment of the Superintendent's hearing as it was harmless error in light of the overwhelming evidence of petitioner's guilt and the fact that petitioner was not seeking the documents to establish a defense and the Hearing Officer did not rely upon them in any manner (*see, Matter of Palin v Coughlin*, 209 AD2d 970; *Matter of Giakoumelos v Coughlin*, 198 AD2d 744). Moreover, petitioner's contention that these documents would have undermined the credibility of respondents' witnesses is, at best, highly dubious.

We further find that petitioner's conditional right to call witnesses was not violated by the Hearing Officer's refusal to call a nurse since her testimony would have been immaterial or redundant (*see, Matter of Fletcher v Selsky*, 199 AD2d 865, 866, *lv denied* 83 NY2d 753; *Matter of Amaker v Coughlin*, 197 AD2d 886).

Lastly, we find that petitioner's claim that the Hearing Officer was not impartial is meritless as the record does not disclose any evidence of bias on the Hearing Officer's part or any proof that the outcome of the hearing flowed from the alleged

bias (*see*, *Matter of Davis v Coughlin*, 200 AD2d 904, 905; *Matter of Mabry v Coughlin*, 196 AD2d 931, *lv denied* 82 NY2d 664).

For these reasons, the administrative determination is confirmed.

Mikoll, J. P., Mercure, Crew III and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.