Matter of Caraway v Annucci (2021 NY Slip Op 00463)





Matter of Caraway v Annucci


2021 NY Slip Op 00463


Decided on January 28, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 28, 2021

529758

[*1]In the Matter of Raynard Caraway, Petitioner,
v
Anthony J. Annucci, as Acting Commissioner of Corrections and Community Supervision, Respondent.

Calendar Date: January 4, 2021

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Pritzker, JJ.


Raynard Caraway, New York City, petitioner pro se.
Letitia James, Attorney General, Albany (Kate H. Nepveu of counsel), for respondent.



Pritzker, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent finding petitioner guilty of violating certain prison disciplinary rules.
While a correction sergeant was supervising inmates in the mess hall, petitioner approached the sergeant and stated that he needed to speak with him. The sergeant responded that he would speak to petitioner after the mess hall was clear. Petitioner became agitated and loudly demanded that the sergeant speak to him then, which drew the attention of other inmates. When the sergeant ordered petitioner to leave the mess hall, he walked toward the sergeant in an aggressive manner. The sergeant displayed a cannister of pepper spray, at which point petitioner left the mess hall. As a result of this incident, petitioner was charged in a misbehavior report with multiple prison disciplinary violations. Following a tier III disciplinary hearing, he was found guilty of creating a disturbance, refusing a direct order, making threats and harassment.[FN1] The determination was later upheld on administrative appeal and this CPLR article 78 proceeding ensued.
Petitioner asserts that the misbehavior report was defective because it was not endorsed by employee witnesses, contrary to the requirements of 7 NYCRR 251-3.1 (b). However, petitioner failed to demonstrate that there were other employees in the mess hall who had "personal knowledge of the facts" surrounding the incident (7 NYCRR 251-3.1 [b]; see Matter of Brown v Venettozzi, 162 AD3d 1434, 1435 [2018]; Matter of Nieves v Annucci, 123 AD3d 1368, 1369 [2014]).
We are also unpersuaded that petitioner was improperly denied video footage of the incident captured by the sergeant's body camera. Petitioner first requested this footage at the commencement of the hearing and, after making a formal request for said footage, was advised by a lieutenant that there was "no body camera video of [the] incident." After petitioner requested further detail because he believed the sergeant was wearing a body camera during the incident, the Hearing Officer called the lieutenant to testify. The lieutenant explained that any footage captured on a body camera is automatically downloaded to a computer system every night and that he searched the computer system and there was nothing downloaded as to petitioner's incident. Then, after the sergeant testified that, to his knowledge, his body camera was fully operational the day of the incident and was turned on, the lieutenant was recalled and asked to check again for body camera footage of the incident. He advised that there was nothing pertaining to this incident either because the body camera was not turned on or because something was "screwed up" with the tape. Thus, petitioner was not improperly denied the footage inasmuch as the Hearing Officer's very thorough inquiry revealed that it did not exist (see Matter of Wimberly v Annucci, [*2]185 AD3d 1364, 1365 [2020], lv denied 36 NY3d 903 [2020]; Matter of Lashway v Keyser, 178 AD3d 1224, 1225 [2019]). Finally, respondent concedes that substantial evidence does not support the charge of making threats and, thus, the finding of guilt as to that charge should be annulled and all references thereto expunged from petitioner's institutional record.[FN2] We have considered petitioner's remaining contentions and find them to be unavailing.
Egan Jr. and Mulvey, JJ., concur.
Aarons, J. (concurring).
I agree with the majority, as well as respondent's concession, that substantial evidence does not support the charge of making threats. I also agree with the majority's holding rejecting petitioner's argument that the misbehavior report was defective. The majority and dissent diverge on whether petitioner was improperly denied video footage of the incident at issue. The dissent offers compelling grounds and policy reasons for its position, with which I agree. "[A]n inmate should be allowed to call witnesses and present documentary evidence in his [or her] defense when permitting him [or her] to do so will not be unduly hazardous to institutional safety or correctional goals" (Matter of Hillard v Coughlin, 187 AD2d 136, 139 [1993] [internal quotation marks and citations omitted], lv denied 82 NY2d 651 [1993]). Prison disciplinary determinations almost always hinge upon the credibility of the witnesses, and video footage may serve as critical corroborating evidence to support the position of the party charged with violating disciplinary rules (see Matter of Lewis v Rivera, 32 AD3d 1120, 1121 [2006]). Although the Hearing Officer conducted an inquiry, as noted by the dissent, various conflicting reasons were offered as to why there was no video footage. In my view, such varying explanations were specious, at best. Notwithstanding the foregoing, upon constraint of Matter of Anselmo v Annucci (176 AD3d 1283 [2019]), I concur with the result reached by the majority.
Garry, P.J. (concurring in part and dissenting in part).
I concur with the majority that substantial evidence does not support the charge of making threats, as respondent concedes. In respect to the disposition of the remaining charges, I respectfully dissent. During the disciplinary proceeding, petitioner made repeated requests for footage captured by the correction sergeant's body camera to establish his defense. The Hearing Officer, in turn, made repeated attempts to obtain that footage. A lieutenant, who was apparently in charge of maintaining the downloaded recordings, testified that he had checked the records maintained within the computer system and found no footage of the incident. The lieutenant explained that the footage is "automatically downloaded every night . . . [s]o, any incident captured on the body camera would be on [the facility's] computer."
The sergeant later testified that he wore a body camera "every time" he was on duty, and that the camera was[*3]"fully operational during every chow" that he supervised. The sergeant testified that he conducted a test of his equipment every morning to ensure that the battery was charged and the camera was fully operational, and would later turn the camera in for downloading. In light of this testimony, and petitioner's repeated requests, the Hearing Officer recalled the lieutenant, after making a request to "double check," again seeking the recording. The lieutenant again testified that there was nothing on the computer to which the cameras are downloaded "pertaining to this incident." He did not identify any reason for this failure of the recording system, but offered only general possibilities, that perhaps "it wasn't on during the period he thought it was on. Or, something was screwed up on the tape." Despite the Hearing Officer's efforts, it thus remains wholly unresolved why the body camera footage of the incident was not available. The sergeant's testimony directly contradicted the lieutenant's suggestion that the camera was not operational, and no explanation was given as to how or why the footage would not have been properly downloaded and preserved for use in the disciplinary proceeding.
The testimony of petitioner and the sergeant presented sharp issues of fact in dispute relative to the underlying charges. The missing video footage was therefore critically important objective evidence that would have aided — indeed, would likely have been dispositive — in resolving the issues posed by the conflicting testimony (see e.g. Matter of Redmon v Smith, 141 AD3d 1071, 1071 [2016]). As the correctional facility and its staff have complete control over the cameras and footage that may be useful in prison disciplinary proceedings, I find it inappropriate to confirm the determination in this matter given the lack of explanation as to why no footage was available (see Matter of Anselmo v Annucci, 
176 AD3d 1283, 1287 [2019, Garry, P.J., dissenting]; compare Matter of Hand v Gardner, 114 AD3d 988, 989 [2014]).[FN3]
Notably, in multiple types of civil proceedings, courts are vested with broad discretion to employ an adverse inference charge, allowing the trier of fact to draw an adverse inference in circumstances where relevant evidence is lost or destroyed (see Pegasus Aviation I, Inc. v Varig Logistica S.A., 26 NY3d 543, 551 [2015]; LaBuda v LaBuda, 175 AD3d 39, 41 [2019]; see also Family Ct Act § 580-316 [g]; People v Olson, 126 AD3d 1139, 1141 [2015], lv denied 25 NY3d 1169 [2015]). In my view, an adverse inference is similarly the appropriate remedy in administrative proceedings such as this. The Hearing Officer would thus have been allowed to consider petitioner's unfulfilled request for the body camera footage and the lack of explanation as to why, in light of the sergeant's testimony, no footage of the incident was available, in rendering a determination upon the underlying charges.[FN4] Accordingly, I would annul the determination and remit for [*4]further proceedings as to three charges — creating a disturbance, refusing a direct order and harassment — with an adverse inference in place.
ADJUDGED that the determination is modified, without costs, by annulling so much thereof as found petitioner guilty of making threats; petition granted to that extent and respondent is directed to expunge all references to this charge from petitioner's institutional record; and, as so modified, confirmed.



Footnotes

Footnote 1: Petitioner was also charged with violent conduct and being out of place, but the Hearing Officer dismissed those charges.

Footnote 2: Because the record does not reflect that the penalty contained a recommended loss of good time, and given that petitioner has served the full penalty imposed, it is not necessary to remit for a redetermination of the penalty (see Matter of Sylvester v Annucci, 186 AD3d 1857, 1858 [2020]).

Footnote 3: Contrary to the concurrence, I do not find any constraint arising from the majority determination in Matter of Anselmo v Annucci (176 AD3d 1283 [2019]); the majority there expressly found that "the failure to produce the video footage for the hearing caused no prejudice to [the] petitioner" (id. at 1284). Although it is unknown which of the parties here would have been prejudiced by the lack of footage, I find it would likely have been dispositive of the issues posed.

Footnote 4: The law imposes different adverse inferences, either permissive or mandatory, depending on the circumstances (see e.g. People v Handy, 20 NY3d 663, 669 [2013]).