**Santiago RAMIREZ, Plaintiff,**

v.

**Donald SELSKY, James E. Sullivan, and Michael McGinnis, Defendants.**

**No. 87 Civ. 6004 (MJL).**

United States District Court,
S.D. New York.

March 31, 1993.

---

Sullivan & Cromwell by Penny Shane, New York City, for plaintiff.

Robert Abrams, Atty. Gen. of the State of New York by Laura M. Nath, Asst. Atty. Gen., New York City, for defendants.

## OPINION AND ORDER

LOWE, District Judge.

Before the Court is an objection to a Report and Recommendation from a Magistrate Judge, pursuant to Fed.R.Civ.P. 72, by Plaintiff Santiago Ramirez ("Plaintiff"). Defendant Michael McGinnis ("Defendant")[1] moved for summary judgment and Plaintiff cross-moved for partial summary judgment, pursuant to Fed.R.Civ.P. 56. These motions were referred to Magistrate Judge Sharon Grubin who filed a Report and Recommendation ("R & R") on October 15, 1992, in which she advises that Defendant's motion be granted and that Plaintiff's motion be denied. Plaintiff has filed objections to the R & R, and Defendant has responded pursuant to Fed.R.Civ.P. 72. For the reasons set forth

---

1. Defendants Donald Selsky, Director of Special Housing of the New York State Department of Correctional Services, and James Sullivan, former Superintendent at the Sing Sing Correction- al Facility, were dismissed from this action by Stipulation and Order of Dismissal filed on May 6, 1992.

below, the Court adopts the R & R as to Plaintiff's motion and declines to adopt the R & R as to Defendant's motion. Both motions are denied.

## BACKGROUND

The background of this case is fully stated in the R & R. Plaintiff was an inmate at Sing Sing Prison, and Defendant, a captain at Sing Sing, was the hearing officer at a hearing addressing alleged misconduct by Plaintiff. The Plaintiff's complaint alleges that Defendant violated his right to due process of law as guaranteed under the Fourteenth Amendment of the United States Constitution by failing to call certain witnesses requested by Plaintiff at his hearing.

On February 10, 1987, a pointed steel rod—a home-made prison weapon commonly referred to as a "shank"—was found in Plaintiff's cell. Plaintiff was served with an inmate misbehavior report charging him with possessing a weapon, and a hearing was scheduled. Prior to the hearing, Plaintiff arranged specifically for inmates David Kromhout and Ricardo Cotti to be called to testify.

At the hearing, Plaintiff testified that the weapon was not his and stated that the witnesses would testify to the same. He explained that Cotti may be able to say that he saw someone place the weapon into his cell. Plaintiff also claimed that perhaps the officers who searched his cell planted the shank because of a grievance he had filed against a different officer, and that perhaps there was a conspiracy amongst the corrections officers.

Kromhout testified that from his cell he saw officers leaving the Plaintiff's cell with a long, skinny object wrapped in a cloth. He stated that he didn't see any of the officers carry it into the cell, but that one of the officers had been carrying a paper bag. Cotti testified that he had seen three inmates walking toward Plaintiff's cell with a brown object in hand and return without the object, but had not seen anyone throw anything into Plaintiff's cell.

Plaintiff contends that a pattern was established whereby when a prison official was mentioned at the hearing, that official was called by Defendant. Throughout the hearing, witnesses, including Sergeant Funn, who directed a search of Plaintiff's cell, and Captain Haskell, who ordered that search, were called. Haskell testified that he ordered the search because of confidential information that other prison officials received from a reliable informant (the "Informant"). The prison officials allegedly believed that Plaintiff possessed contraband which would be used to assist in an escape.

It was revealed in the later testimony of Officer Richards that he found the weapon on top of a box at the back of Plaintiff's cell in a position which no one outside the cell would have been able to reach. Plaintiff alleged that he could establish that it was the Informant who planted the weapon in his cell.

Plaintiff stated that he wished to call the Informant as a witness, whereupon the Defendant responded that questions proposed by Plaintiff for the Informant were irrelevant. Also, in dispute are allegations that Plaintiff—through the established pattern of calling witnesses—requested that Defendant call Sergeant DeZayas, the prison official who received the information from the informant, to testify. Plaintiff alleges that Defendant improperly denied this request. Following Plaintiff's closing statement, in which he again objected to Defendant's decision not to call the Informant, Defendant found Plaintiff guilty of possessing a contraband weapon and imposed a penalty of sixty days confinement to a special housing unit, loss of telephone and commissary privileges for that same time, and loss of one month of good time.

On February 23, 1987, Plaintiff appealed Defendant's determination to the Special Housing/Inmate Disciplinary Program Office on the ground of Defendant's refusal to call the Informant as a witness, or to explain his refusal in a written statement. The determination was affirmed on April 17, 1987, and Plaintiff brought an Article 78 proceeding in New York State Supreme Court. On November 30, 1987, after Plaintiff had served his sixty day punishment, the New York Supreme Court annulled the determination. The court found the denials of Plaintiff's

requests to have the Informant and DeZayas called as witnesses improper, and reinstated his lost good-time. *Ramirez v. Coughlin, et al.,* Index No. 14161/87 (N.Y.Sup.Ct.Westchester Co., Nov. 30, 1987) (Wood, J.). The decision was not appealed. Plaintiff commenced this action for compensatory and punitive damages pursuant to 42 U.S.C. § 1983. Defendant has moved for summary judgment, and Plaintiff has cross-moved for partial summary judgment.

## DISCUSSION

### I. *Standard for Summary Judgment.*

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which may be discharged by showing an absence of evidence in support of the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The nonmoving party must then, pursuant to Fed.R.Civ.P. 56(e), meet a burden of coming forward with specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

In deciding this motion, all ambiguities must be resolved and all reasonable inferences drawn in favor of the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). But the Court must also determine if evidence is sufficient so that a jury could return a verdict for that nonmoving party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. The Court may grant summary judgment where the nonmovant's evidence is merely colorable or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11.

The Court must focus on both the materiality and the genuineness of the factual issues raised. A dispute over unnecessary or irrelevant facts will not preclude summary judgment, but the presence of unresolved factual issues that are genuine—on which a reasonable jury could return a verdict for the nonmoving party—and that are material to the outcome of the litigation, mandates a denial of summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

In sum, if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). These principles will be applied to the Plaintiff's motion for partial summary judgment and the Defendant's motion for summary judgment.

### II. *Plaintiff's Motion.*

Plaintiff seeks partial summary judgment based upon the determination in the Article 78 proceeding between these litigants. In that proceeding, the New York court found Defendant's conduct improper. Plaintiff argues that the Article 78 proceeding precludes litigation of issues previously determined. The R & R rejected Plaintiff's position in favor of recent case law which has held to the contrary.

State court proceedings are given full faith and credit in federal court, 28 U.S.C. § 1738, and may have a preclusive effect in federal court proceedings. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (employment discrimination claim). For example, in *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the doctrine of collateral estoppel, on the issue of suppression of evidence already litigated in a state criminal case, was held to apply to a federal § 1983 action where the parties had a *full and fair opportunity to litigate* federal claims while in

state court. *See also Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979).

This Court, however, agrees with the determination of the Magistrate Judge and her reliance on *Gutierrez v. Coughlin,* 841 F.2d 484 (2d Cir.1988). In that case, an inmate brought a § 1983 action against prison officials for violating his due process rights. Prior to that action, an Article 78 proceeding was held before a New York State tribunal which found for the inmate. The inmate sought to collaterally estop the officials from relitigating the due process violation issue. The Court of Appeals held that the state judgment would have no preclusive effect in the federal action. *Id.* at 486. "Damages for civil rights violations may not be recovered in an Article 78 proceeding." *Id.* (citing *Davidson v. Capuano,* 792 F.2d 275, 278–79 (2d Cir.1986)). The defendants in *Gutierrez,* while before the Article 78 tribunal, therefore "did not have the same incentive to litigate that state court action as they did the federal § 1983 action." *Gutierrez,* 841 F.2d at 486. *See also Fox v. Coughlin,* 893 F.2d 475 (2d Cir.1990), and *Zavaro v. Coughlin,* 775 F.Supp. 84 (W.D.N.Y.1991), *aff'd,* 970 F.2d 1148 (2d Cir.1992). *But see Petrella v. Siegel,* 843 F.2d 87 (2d Cir.1988).

■ This Court finds the logic of *Gutierrez* applicable to the instant action. There was no incentive nor full opportunity on the part of the Defendant to litigate the federal claims during the Article 78 proceeding, and this proceeding will not estop Defendant. No preclusive effect is given to the Article 78 proceeding in this case, an effect on which Plaintiff relies in seeking partial summary judgment. For these reasons, the Court adopts the Magistrate Judge's R & R. Plaintiff's motion for partial summary judgment is denied.

III. *Defendant's Motion.*

Defendant argues that he is absolutely immune from suit because he is a hearing officer performing functions comparable to those of a judge. Defendant further claims that he is entitled to summary judgment on the issue of his alleged failure to call Sergeant DeZa-

yas and the Informant as witnesses at the Plaintiff's disciplinary hearing.

■ The Magistrate Judge rejected Defendant's contention as to the defense of absolute immunity based upon his performance of judge-like functions under *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). She cited *Zavaro v. Coughlin,* 970 F.2d 1148, 1153 n. 2 (2d Cir. 1992), for the rule that "prison disciplinary hearing officers are protected only by qualified immunity." Defendant does not object to this recommendation, and the Court summarily adopts it.

■ The Court next examines the issue of Defendant's alleged failure to call requested witnesses. The opportunity to call witnesses must be given to an inmate at a disciplinary hearing. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). This right exists when not "unduly hazardous to institutional safety or correctional goals," *Id.* at 566, 94 S.Ct. at 2979, and can be "necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Ponte v. Real,* 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). Prison officials have the discretion to keep disciplinary hearings "within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority," and thus hearing officers may deny a request to call a witness, "whether it be for irrelevance, lack of necessity or the hazards presented in individual cases." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980. However, due process requires that reasons "logically related to preventing undue hazards to 'institutional safety or correctional goals'" must be stated for refusing to call witnesses. *Ponte,* 471 U.S. at 497, 105 S.Ct. at 2196. The burden of proving the rationality of the refusal lies with the prison officials. *Id.* at 499, 105 S.Ct. at 2197.

■ This Court agrees with both Defendant and the Magistrate Judge that hearing officers are given a high level of discretion in determining whether to call witnesses. Minimal due process is required at prison disciplinary hearings. *See Afrika v. Selsky,* 750 F.Supp. 595 (S.D.N.Y.1990). However, by

law, hearing officers must state reasons logically related to the issues of institutional safety or correctional goals upon a refusal to call witnesses. *See Ponte,* 471 U.S. at 497, 105 S.Ct. at 2196. The burden of establishing the rationality of the decision not to call witnesses lies with the officer. *Id.* at 499, 105 S.Ct. at 2197. *See also Fox v. Coughlin,* 893 F.2d 475 (2d Cir.1990); *Moore v. Scully,* No. 90 Civ. 3817, 1993 WL 22129 (S.D.N.Y. January 26, 1993) (Lasker, J.). Defendant has not satisfied his burden and given reasons logically related to the issues stressed by the Supreme Court in *Ponte.*

The issues in dispute in this case are genuine and material. A jury could reasonably find that Plaintiff sought the testimony of Sergeant DeZayas, and that Defendant's alleged refusal to permit the testimony of DeZayas and the Informant was improper. Defendant has the burden of showing reasons logically related to the furtherance of institutional safety or correctional goals. *Ponte,* 471 U.S. at 497, 105 S.Ct. at 2196. Once met, this burden may be difficult for Plaintiff to overcome. *Id.* at 499, 105 S.Ct. at 2197. However, satisfaction of this burden by Defendant is required.

Plaintiff has given specific facts which make his allegations more than merely colorable. He describes a format alleged to have been established between himself and Defendant for determining which witnesses would be called, and he shows that DeZayas is one such witness. Plaintiff also gives reasons for seeking the testimony of DeZayas and the Informant. Whether Defendant's failure to call DeZayas and the Informant as witnesses was proper or improper will be for the finder of fact.

The Court disagrees with Plaintiff's characterization of the law as requiring merely "that the non-movant come forward with 'some evidence' " to defeat a motion for summary judgment. Plaintiff's Objections to Report and Recommendation, ¶ 5. The burden on the nonmoving party is greater than this.

*See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514 (nonmoving party must set forth "specific facts"). However, the Court finds that Plaintiff has set forth facts showing genuine issues of material fact adequate to make summary judgment inappropriate. The issues are material and necessary to a determination of liability under § 1983. For these reasons, the Court declines to adopt the Magistrate Judge's R & R as to Defendant's summary judgment motion. Defendant's motion for summary judgment is denied.

## CONCLUSION

For the reasons stated above, the Court adopts the Report and Recommendation as to Plaintiff's motion for partial summary judgment, and declines to adopt it as to Defendant's motion for summary judgment. Both the motion for partial summary judgment and the motion for summary judgment are denied.

It is SO ORDERED.

## REPORT AND RECOMMENDATION

GRUBIN, United States Magistrate Judge:

In this action brought pursuant to 42 U.S.C. § 1983, plaintiff Santiago Ramirez alleges that his rights under the Due Process Clause were violated in connection with a Tier III Superintendent's hearing at the Sing Sing Correctional Facility on February 15, 16 and 19, 1987 at which he was found guilty of possessing a weapon in his cell.[1] Pending are defendant Michael McGinnis' motion for summary judgment and plaintiff's motion for partial summary judgment.[2] As explained below, I respectfully recommend that your Honor grant defendant's motion and deny plaintiff's.

---

1. Plaintiff brought this action *pro se* but is now represented by court-appointed counsel.

2. The other two defendants named in the complaint, Donald Selsky, the Director of the New York State Department of Correctional Services

Special Housing/Inmate Disciplinary Program, and James E. Sullivan, the Superintendent at Sing Sing, were dismissed from this action by Stipulation and Order of Dismissal on April 23, 1992.

## BACKGROUND

At all times pertinent, plaintiff was an inmate at Sing Sing, and defendant, a Captain at Sing Sing, was the hearing officer at plaintiff's hearing. The gravamen of the Complaint is that defendant violated plaintiff's right to due process of law under the Fourteenth Amendment by failing to allow him to call witnesses.[3] On February 10, 1987, "a pointed steel rod approximately eight & one half inches long" was found during a search of plaintiff's cell. On February 11, 1987, plaintiff was served with an Inmate Misbehavior Report charging him with possessing a weapon. The report had been issued by Correction Officer Richards who had found the steel shank in the search ordered by a Sergeant Funn. Ex. A; T1.1.[4] Prior to the hearing, plaintiff spoke with an employee assistant who, at plaintiff's request, arranged for two inmates, David Kromhout and Ricardo Cotti, to be called to testify. T1.1–2.

On the first day of the hearing, plaintiff testified, denying that the weapon was his. Defendant asked plaintiff to what his two witnesses would testify and plaintiff responded that they would be able to say that the weapon found in his cell was not his. He explained that Cotti, a close friend, was also the porter on the gallery and "maybe he saw somebody else go in my cell and put it in there." T1.3. Plaintiff explained that the officers who searched his cell could have planted the steel shank. He opined that they might have done so because of a grievance he filed against a different officer and that perhaps there was a conspiracy among correction officers. Defendant adjourned the hearing to the following day to call the two witnesses. Kromhout testified that from his nearby cell he saw the officers who conducted the search of plaintiff's cell coming and going and saw Officer Richards after the search leaving plaintiff's cell carrying a long skinny object wrapped in a cloth. He did not see any of the officers carrying it into the cell, although one of the officers had been carrying a paper bag when he arrived. Cotti, the porter, testified that earlier that day he saw three inmates, one with a bag in his hand, walking down the gallery in the direction of plaintiff's cell. He did not see anyone throw anything into plaintiff's cell. After this nonprobative testimony, plaintiff requested that Sergeant Funn be called. Defendant did so, and Funn testified in response to plaintiff's questioning that he had been ordered by Captain Thomas Haskell to have plaintiff and three other inmates strip-frisked and their cells searched, that Funn had not received information from any confidential informant, and that Haskell had merely indicated to Funn that the reason for the searches was that the four allegedly were going to attempt to escape. T1.17–19. At this point, plaintiff stated, "Sgt. Funn played his role in this hearing now we call Capt. Haskell in here." Plaintiff then explained he believed that Haskell's testimony would establish that the confidential informant whose information to Haskell had led to the search had planted the weapon. T1.19–22. Defendant said that he would call Haskell, but warned plaintiff that he could not "continue and go on and on and on and call people" when there was no evidence showing that "someone other than your self put that shank in that cell." He pointed out that plaintiff had called Kromhout and Cotti for that reason, but their testimony turned out essentially irrelevant:

> What I am saying to you is one witness saying it's possible the inmates put it in, you got another witness saying that possibly officers put it in there, because they also have a brown bag when they walked down the gallery. Neither of which proves to me that there's any substantial evidence pointing to that fact, that someone else put that shank.

---

3. The prolix Complaint lists fifteen separate causes of action. Many are repetitive; others are directed to the two defendants who have been dismissed from the action; and others merely state the damage plaintiff has suffered but do not set forth separate claims.

4. "Ex. __" refers to attachments to the affidavit of Assistant Attorney General Laura M. Nath submitted in support of defendant's motion; "T1.__" refers to pages of the transcript of the hearing sessions on February 15 and 16, 1987; "T2.__" refers to pages of the transcript of the session on February 19, 1987.

T1.22.

Plaintiff then requested that Officer Richards also testify, and defendant agreed to the requests, adjourning the hearing until three days later. T1.24.

Captain Haskell testified that plaintiff's cell was searched because he received "confidential information given to the A–Block Sgt. and the A–Block OIC [Officer in Charge]" that plaintiff may have "contraband items in his cell which may assist him in an escape." T2.1–2.[5] Responding to direct questions from plaintiff, Haskell said he did not recall "exactly" how the Sergeant and OIC got the information, but that the informant had been, according to them, "a reliable informant in past instances and based on that information we acted." Establishing that Haskell did not have contact with the informant, plaintiff stated:

> Well then maybe perhaps the OIC of A–Block or such Sergeant who received all this information from, it is very important that we get to the bottom of it cause I'm being, I was just moved upstairs today....

T2.2. Plaintiff did not request, however, that the Sergeant or OIC be called to testify. Officer Richards then testified. After verifying his report and identifying a photograph of the weapon he had found, Richards stated that he had found it on top of a cardboard box which was on another box on the floor next to a little stand at the back of plaintiff's cell. Richards also stated that someone outside the cell would not have been able to place the weapon in that position by reaching into the cell. T2.4. Plaintiff stated that he had no questions for Richards, and after a short break defendant commenced the following exchange:

> MCGINNIS: ... Captain Haskell has stated that the information came from Sgt. DeZayas, okay
>
> RAMIREZ: Yup
>
> MCGINNIS: Sgt. DeZayas is not in, he is off today and tomorrow. Today is my last day here okay so in a situation where a confidential informant is used and there is no physical evidence alright, I would make a delay and have this completed upon my

return, however, we have physical evidence that was found in your cell, alright. Your basis for your defense is that in fact whoever said and correct me if I'm wrong, whoever told the Sergeant that in your mind is the person who, in fact, put said weapon in your cell, is that correct

> RAMIREZ: Yes it is
>
> MCGINNIS: Okay, the information that the Sergeant received turned up a shank in your cell, alright, so that speaks somewhat of the confidential informant's
>
> RAMIREZ: Reliability
>
> MCGINNIS: Reliability, now it's your contention that he put it [in] the cell. I don't know if there is any way that you can prove that you can make it as a supposition that he did

T2.4–5. Plaintiff then explained that, because his cell was not constantly locked, any other inmate housed in that area could have entered it and placed the weapon there. Defendant then explained:

> What I'm saying to you is that in fact there was a shank in your cell.... [S]o I mean it's there, we are not holding you or charging you with confidential informant testimony that you carry a shank, right, and we don't have the shank, we have the physical evidence.

T2.6. He then adjourned the hearing to locate Officer Ross, the A–Block OIC. Ross testified that he had received information regarding a possible escape from an inmate, a confidential informant whom he had known for about eight months who had provided him with information that out of five previous occasions proved to be right two or three times. Plaintiff asked Ross no additional questions. T2.7–8.

Thereafter, defendant asked plaintiff to read the questions that he wanted to ask the confidential informant. Plaintiff had four questions:

> [1] Do you know a convict named Sandy, me, that's my nickname
>
> [2] Do you have any personal dislikes for guys that work in the law library

---

**5.** The A–Block Sergeant had been DeZayas and the A–Block OIC had been Jules Ross.

[3] Even though you are confidential informant do you sometime [plant] contraband [in the cells of the people you're giving] information on just to be assured they leave the block [and strengthen the reliability of] your confidential [info/]source

[4] What are the benefits [you reap from] being a confidential informant. Are you paid or do you do it for kicks.[6]

Defendant then stated that he would not call the confidential informant "because truthfully those questions really don't seem to be relevant." T2.8. Plaintiff repeated his request that defendant call the informant. Defendant responded that he would not because there had been a weapon found in his cell and because it was obvious what the answers to plaintiff's four questions would be. T2.8A. Following plaintiff's closing statement, in which plaintiff again objected to defendant's decision not to call the informant, defendant read his written disposition into the record. He found plaintiff guilty of possessing a contraband weapon and imposed a penalty of 60 days' confinement to a special housing unit, 60 days' loss of phone and commissary privileges, and loss of one month of good time. He described the evidence on which he relied as Richards' written report and testimony establishing that a weapon was found in plaintiff's cell and two photographs of the weapon Richards had identified. He stated that plaintiff's defense of "informant placing same weapon in his cell cannot be proven." T2.9.

On February 23, 1987, plaintiff appealed the determination to the Special Housing/Inmate Disciplinary Program Office. The sole ground cited in his three-page letter was defendant's refusal to call the informant as a witness or to explain his refusal to do so in a written statement. After the determination was affirmed on April 17, 1987, plaintiff brought an Article 78 proceeding in New York Supreme Court. On November 30, 1987, after plaintiff had served his 60 days in keeplock, the court annulled the determination, finding that plaintiff had requested that the informant and Sergeant DeZayas be produced as witnesses and that his right to produce witnesses on his behalf had been "improperly denied." *Ramirez v. Coughlin,* Index No. 14161/87, Decision & Judgment (N.Y.Sup.Ct.Westchester Co.) (Wood, J.), 3. The decision was not appealed, and plaintiff then commenced this action for compensatory and punitive damages.

## DISCUSSION

### I.

Under Rule 56(c) of the Federal Rules of Civil Procedure a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 [106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265] (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322 [106 S.Ct. at 2552].

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion," *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 [90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142] (1970); *Hathaway v. Coughlin,* 841 F.2d 48, 50 (2d Cir.1988); *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied,* 480 U.S. 932 [107 S.Ct. 1570, 94 L.Ed.2d 762] (1987). But the court

---

**6.** The text in brackets is taken from plaintiff's February 23, 1987 letter of appeal, which also sets forth the four questions he wanted defendant to ask with the slightly different language. Ex. C.

is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 [106 S.Ct. 2505, 2511, 91 L.Ed.2d 202] (1986), and to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative, *id.* at 249–50 [106 S.Ct. at 2510–11]; *Knight v. U.S. Fire Insurance Co.*, 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986), *cert. denied*, 479 U.S. 1088 [107 S.Ct. 1295, 94 L.Ed.2d 151] (1987). To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 [106 S.Ct. at 2510]. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.*, but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion. *See, e.g., Knight v. U.S. Fire Insurance Co.*, 804 F.2d at 11–12.

Once the nonmoving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy his or her ultimate burden under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. at 330 & n. 2 [106 S.Ct. at 2556 & n. 2] (Brennan, J., dissenting). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 [106 S.Ct. 1348, 1356, 89 L.Ed.2d 538] (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 [88 S.Ct. 1575, 1592, 20 L.Ed.2d 569] (1968)); *see also Weg v. Marchiola [Macchiarola]*, 654 F.Supp. 1189, 1191–92 (S.D.N.Y.1989 [1987]) ).

## II.

At the outset, we must reject defendant's argument that his motion must be granted because, as an officer whose role is " 'functionally comparable' to that of a judge," *Butz v. Economou*, 438 U.S. 478, 513 [98 S.Ct. 2894, 2914, 57 L.Ed.2d 895] (1978), he is entitled to absolute immunity from suit. The Second Circuit has recently noted that "prison disciplinary hearing officers are protected only by qualified immunity." *Zavaro v. Coughlin*, 970 F.2d 1148, 1153 n. 2 (2d Cir. 1992).

We must also reject plaintiff's argument that the judgment in his favor in his Article 78 proceeding requires that his motion herein be granted. We note initially that "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Russell v. Coughlin*, 910 F.2d 75, 78 n. 1 (2d Cir.1990). It is unclear whether the Decision and Judgment in *Ramirez v. Coughlin* rests on federal constitutional standards, rather than state constitutional (or statutory) standards. But, moreover, because defendant "could not have been held personally liable in such a proceeding" and "did not have the same incentive to litigate" nor could he raise there the defenses available to him here, plaintiff in any event would not be entitled to use that state court judgment offensively for purposes of collateral estoppel in this action. *Gutierrez v. Coughlin*, 841 F.2d 484, 486 (2d Cir.1988) (per curiam); *see Fox v. Coughlin*, 893 F.2d 475, 478 (2d Cir.1990) (per curiam); *Silva v. Coughlin*, No. 89 Civ. 8584 (MBM), 1992 U.S.Dist.Lexis 7323 at *8, 1992 WL 116744 at *3 (S.D.N.Y. May 18, 1992); *Zavaro v. Coughlin*, 775 F.Supp. 84, 88 (W.D.N.Y. 1991), *aff'd*, 970 F.2d 1148 (2d Cir.1992). While plaintiff concedes that the legal issue of whether plaintiff's constitutional rights were violated remains a matter for this court regardless of any state court ruling in that regard, he argues that defendant should be precluded from relitigating here the *facts* determined by the Article 78 court. But this is not a case in which factual questions were litigated by the state court nor need be litigated here. The only factual material needed for a determination of the constitutional

issues posed by this case is what happened at the disciplinary proceeding. Indeed, there is no issue of fact to be determined requiring trial in this case because the question of whether plaintiff received a fair hearing within the parameters of the Due Process Clause is a question of law to be determined on the basis of the hearing transcript. The Article 78 court did no "fact-finding"; it reviewed that transcript to arrive at its legal conclusions, and our own review of the transcript provides all the facts necessary for our legal determinations.[7] More significantly, the reasons preclusive effect is generally not given to Article 78 decisions in which plaintiffs have prevailed by the courts in this Circuit are not different with respect to the state court's factual as opposed to legal determinations. The extent of defendant's lack of "incentive to litigate" the Article 78 proceeding remains unchanged whether he is litigating the facts or the law of the case. To accept plaintiff's contention would be to contravene the sensible rationale and the holdings of those cases.

### III.

In *Wolff v. McDonnell,* 418 U.S. 539 [94 S.Ct. 2963, 41 L.Ed.2d 935] (1974), the Supreme Court held that in a prison disciplinary hearing an inmate must be given an opportunity "to call witnesses and present documentary evidence in his defense...." *Id.* at 566 [94 S.Ct. at 2979]. However, this right "is necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Ponte v. Real,* 471 U.S. 491, 495 [105 S.Ct. 2192, 2195, 85 L.Ed.2d 553] (1985). Stating that "prison officials must have the necessary discretion to keep the hearing within reasonable limits," the Supreme Court has recognized that a hearing officer may deny a request to call a witness, "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff v. McDonnell,* 418 U.S. at 566 [94 S.Ct. at 2980]. *See Scott v. Kelly,* 962 F.2d 145, 147 (2d Cir.1992) (wit-

ness request "can be denied on the basis of irrelevance or lack of necessity"); *Fox v. Coughlin,* 893 F.2d at 478; *Allen v. Scully,* No. 91 Civ. 5610 (PNL), 1991 WL 278901 at *3, 1991 U.S.Dist.Lexis 18274 at *10 (S.D.N.Y. Dec. 16, 1991); *Nurse v. Duffany,* No. 89 Civ. 4373 (JSM), 1991 WL 24321 at *7, 1991 U.S.Dist.Lexis 1940 at *21 (S.D.N.Y. Feb. 12, 1991); *Afrika v. Selsky,* 750 F.Supp. 595, 601 (S.D.N.Y.1990).

A reviewing court must therefore "accord due deference" to the hearing officer's decision to exclude a witness from a hearing. *Nurse v. Duffany,* 1991 WL 24321 at *8, 1991 U.S. Dist.Lexis 1940 at *24; *Woods v. Robertson,* No. 90 Civ. 1672 (JFK), 1990 WL 115717 at *3, 1990 U.S.Dist.Lexis 10044 at *9 (S.D.N.Y. Aug. 6, 1990). Due deference may mean upholding a denial of a request even in situations where "the denied witnesses *might* have provided testimony to exculpate [the inmate]," *Afrika v. Selsky,* 750 F.Supp. at 601 (emphasis in original), or where the reviewing court might have ruled differently at the hearing itself. *Id.* at 600 ("while we believe that the plaintiff could have had a fairer hearing had he been given the opportunity to call all of his witnesses, ... the hearing officer[ ] did not violate the minimal Supreme Court requirements by selecting which witnesses he would call"). *See Scott v. Kelly,* 962 F.2d at 147 n. 2 ("We must defer to the judgment of prison officials in balancing prisoners' rights against penological interests, absent a showing of abuse of discretion.")

### IV.

With respect to plaintiff's claim that defendant refused his request that he call Sergeant DeZayas as a witness, defendant argues that there is no genuine issue for trial because plaintiff made no such request. In support of his motion on this claim, defendant points out that, although plaintiff ex-

---

7. Plaintiff identifies the following "two factual determinations explicitly and necessarily made in the Article 78 proceeding: 1) that McGinnis unreasonably denied plaintiff's request to call the Inmate witness; and 2) that McGinnis unreasonably denied plaintiff's request to call Sergeant DeZayas as a witness." Plaintiff's Memorandum

of Law, March 17, 1992, at 17. But both these determinations are legal ones, not factual ones. (In a footnote to his reply memorandum of law, plaintiff identifies the factual question of whether plaintiff requested Sergeant DeZayas' testimony. This question is, in any event, immaterial to the outcome of this case. (*See infra,* at Section IV).)

pressly voiced requests that Funn, Haskell, Richards and the informant testify or be interviewed, he did not ever request that DeZayas testify or appear. In response, and in support of his own motion, plaintiff argues that such a request was made or that an issue of material fact exists as to whether a request was made. Plaintiff, in essence, argues that during the hearing it became clear that he wished the testimony of each correction official in the line of command so that defendant could identify the informant, and that he and defendant "established a routine of calling each officer in the line as he was identified by another officer." He maintains that this routine was "so well established" that defendant "responded" to two such "requests"—producing Ross and refusing to call DeZayas—"without my even asking him." Affirmation of Santiago Ramirez, affirmed Mar. 17, 1992, ¶¶ 11–14. Because defendant told him that DeZayas was not at work that day and that the hearing would be concluded without him, plaintiff "understood that any further request for Sergeant DeZayas would be futile." *Id.* ¶ 15. In a reply affidavit in response to these arguments, although defendant denies that any "routine" of calling each officer was established, Affidavit of Michael McGinnis, sworn to Mar. 27, 1992, ¶ 12, he also states that he called Ross to testify because he "inferred that plaintiff wanted either the Officer in Charge (Officer Ross) *or* the Sergeant (Sergeant DeZayas) who received the information to testify." *Id.* ¶ 9 (emphasis in original). In light of DeZayas' "unavailability" and since both officers received information from the informant, he determined that Ross' testimony "would be sufficient to satisfy plaintiff." *Id.* ¶ 10.

Plaintiff's allegations ring hollow and are negated by the transcript of the hearing. *See Cortez v. Selsky,* 1992 WL 42201 at \*4, 1992 U.S.Dist.Lexis 2237 at \*12 (S.D.N.Y. Feb. 26, 1992). Although some sort of "routine" may have been established between plaintiff and defendant to trace the chain of hearsay back to the informant, there is no significantly probative basis for plaintiff to claim that defendant either understood or should have understood him to have requested that both officers who had spoken to the informant need be called. Plaintiff's own

reference at the hearing, following Captain Haskell's testimony, to "the OIC of A–Block *or* such Sergeant," T2.2 (emphasis added), does not support his current contention. Following his statement that he would not call DeZayas, defendant proceeded to produce Ross as a witness. Indeed, that defendant as a hearing officer took it upon himself without plaintiff's request to consider calling Ross and DeZayas as witnesses should be seen as an effort to afford plaintiff as full and fair a hearing as he could. It should hardly work to harm him in this proceeding.

Since he emphatically repeated his request that defendant call or interview the informant after defendant denied it, T2.8A, plaintiff's explanation for not requesting that DeZayas testify—that defendant's preemptive denial made it "futile"—is not credible. Moreover, plaintiff's appeal four days later is completely silent on defendant's failure to call DeZayas and does not even refer to DeZayas. Since plaintiff had every reason to raise this objection in his appeal, his failure to do so also connotes that he did not think he had requested his testimony at the hearing and/or that he did not think the testimony necessary and/or that he saw nothing wrong at that time with what defendant had done in that regard. But even if his own understanding was as he represents it here, it is clear that he did not convey that understanding to defendant at the hearing. *See Salahuddin v. Harris,* No. 83 Civ. 1782 (RWS), 1985 WL 478 at \*2 (S.D.N.Y. Apr. 8, 1985) (also available without citation on Lexis) ("Because [plaintiff] made no objection at or before the hearing, he may not now raise his argument before this court.") (quoting *Majid v. Henderson,* 533 F.Supp. 1257, 1273 (N.D.N.Y.), *aff'd,* 714 F.2d 115 (2d Cir.1982)); *Wolfe v. Carlson,* 583 F.Supp. 977, 983 (S.D.N.Y.1984) ("Plaintiff cannot turn his own lack of diligence into a constitutional deprivation.")

Of more significance, however, is that whether plaintiff should be seen to have requested DeZayas' testimony is not an issue of material fact for the purposes of this action because, even if we assume he did make the request and defendant denied it, his constitutional right to a fair hearing could not be seen to have been violated. Plaintiff identi-

fies no facts that he would have sought to establish by having DeZayas as a witness. He says only that he sought to question each officer to determine ultimately the identity of the confidential informant so that the informant could be questioned. But DeZayas' testimony was hardly necessary for that purpose. The immateriality of any testimony of DeZayas is confirmed by looking at plaintiff's actions when Ross testified. Plaintiff was given full opportunity to pose questions to Ross. It is puzzling, indeed, what plaintiff thinks he might have achieved through DeZayas' testimony in view of his failure to request that any substantive questions be directed to Ross. Given, thus, that plaintiff has failed to specify any way in which the failure of DeZayas to testify deprived him of any meaningful information at his hearing, defendant is ·entitled to judgment on this claim as a matter of law.

## V.

With respect to plaintiff's claim that defendant improperly refused his request either to call the informant as a witness or to interview him outside his presence, defendant correctly argues in support of his motion that there is no constitutional requirement that a hearing officer take testimony from a confidential informant. In cases where hearsay testimony about a confidential informant's information provides *the* basis for a determination of guilt, the requirements of due process may be met by testimony (which may itself be given in the absence of the inmate) by an individual who reports or furnishes information obtained from the informant. In such cases, the hearing officer must make an independent assessment of the informant's reliability and credibility. *See Kyle v. Hanberry,* 677 F.2d 1386, 1390 & n. 2 (11th Cir.1982); *Russell v. Coughlin,* 774 F.Supp. 189, 196–97 (S.D.N.Y.), *summary judgment granted,* 782 F.Supp. 876 (S.D.N.Y.1991); *Wolfe v. Carlson,* 583 F.Supp. at 982. Plaintiff contends that the principal point of his proposed four questions to have asked the informant was not to elicit a confession from the informant that he planted the weapon but to establish that the informant may have had a motive for having planted it and that defendant's cursory questions to Ross were insufficient to establish the reliability or credibility of the informant.

The "independent assessment" analysis cases cited by plaintiff have no bearing on this case, however, because the evidence of plaintiff's guilt—the weapon found in his cell—did not depend on hearsay testimony, was not otherwise disputed and thus required no "independent assessment." The cases on which plaintiff relies are applicable to a different situation, for example one in which an inmate is found guilty solely on the basis of an officer's report that an informant had observed a weapon in plaintiff's cell. In terms of the relevant cases dealing more generally with a hearing officer's discretion to deny inmate requests for particular witnesses, in the circumstances of this case, defendant's decision not to call the informant as a witness and to conclude his taking of evidence with Ross' testimony was a reasonable determination to "keep the hearing within reasonable limits" to which we must give "due deference." *Allen v. Scully,* 1991 WL 278901 at *3, 1991 U.S.Dist.Lexis 18274 at *10; *Woods v. Robertson,* 1990 WL 115717 at *3, 1990 U.S.Dist.Lexis 10044 at *10. Given the accusatory nature of plaintiff's four questions for the informant, there was clearly "logical support" for defendant's conclusion that they would not elicit "probative evidence." *Nurse v. Duffany,* 1991 WL 24321 at *8, 1991 U.S.Dist.Lexis 1940 at *24. Plaintiff's criticism now of defendant's questioning of Ross incorrectly presupposes that defendant was obligated to "independently assess" the informant's credibility through Ross and that the burden was on defendant to develop plaintiff's hypothetical defense for him. In view of the entirely hypothetical character of the proffered defense, it was clearly sufficient under the Due Process Clause that plaintiff be given an opportunity to present questions to one of the officers who had received information from the informant. However, plaintiff even declined to pose any substantive questions at all to Ross after being given an "ample opportunity" to do so. *Cortez v. Selsky,* 1992 WL 42201 at *5, 1992 U.S.Dist.Lexis 2237 at *13. Insofar as the evidence of guilt was established—the finding of the weapon in plaintiff's cell—and

plaintiff's defense was an unsubstantiated hypothesis, what is noteworthy is that plaintiff was afforded an opportunity to develop his hypothesis through the testimony of two inmate witnesses and to examine the basis for the search of his cell through the testimony of four officers. *See Nurse v. Duffany,* 1991 WL 24321 at *8, 1991 U.S.Dist.Lexis 1940 at *25; *Allen v. Scully,* 1991 WL 278901 at *3, 1991 U.S.Dist.Lexis 18274 at *10. Defendant's explanation to plaintiff that he saw no basis to require the testimony of the informant because plaintiff had proffered no evidence whatsoever to indicate the informant had planted the weapon was certainly reasonable. It should be noted that the hearing commenced with plaintiff's belief that the officers who conducted the search could have planted the weapon, and he opined they might have done so in retaliation for a grievance he had filed. He also demanded the testimony of inmates Kromhout and Cotti who implied, respectively, that perhaps an officer carrying a bag planted the weapon or that certain other inmates carrying a bag could have planted it. After exhausting all other testimony and finding no probative evidence to establish his speculations, he now naturally focuses on the one witness for whom defendant did not allow any further fishing. While perhaps plaintiff "could have had a fairer hearing,"[8] under the circumstances, defendant did not violate the "minimal Supreme Court requirements," *Afrika v. Selsky,* 750 F.Supp. at 600, and defendant's motion for summary judgment should therefore be granted on this claim.

### CONCLUSION

For the foregoing reasons, I respectfully recommend that defendant's motion for summary judgment be granted and plaintiff's motion for partial summary judgment be denied.

Copies of this Report and Recommendation have been mailed October 14, 1992 to the following:

Penny Shane, Esq.
125 Broad Street
28th Floor
New York, NY 10004

Laura M. Nath, Esq.
Assistant Attorney General
New York State Department of Law
120 Broadway
New York, NY 10271

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Mary Johnson Lowe, to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Lowe. *See* 28 U.S.C. § 636(b)(1); Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure; *Thomas v. Arn,* 474 U.S. 140 [106 S.Ct. 466, 88 L.Ed.2d 435] (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam).

Dated: New York, New York
October 14, 1992

---

**8.** Any import at all of the informant's testimony, of course, assumes the highly unlikely situation that he might have shown some motive to have planted this weapon in plaintiff's cell by answering plaintiff's four questions affirmatively.